NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4761

THE STATE OF OHIO, APPELLANT, *v.* GWYNNE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gwynne,* Slip Opinion No. 2019-Ohio-4761.]

*Criminal law—State forfeits the right to argue that a court of appeals is barred from reviewing a sentencing appeal when the state does not timely invoke a defendant's appeal waiver—R.C. 2929.11 and 2929.12 have no application to consecutive-sentencing review in a court of appeals—Court of appeals' judgment reversed and cause remanded.*

(No. 2017-1506—Submitted January 8, 2019—Decided November 21, 2019)

APPEAL from the Court of Appeals for Delaware County,

No. 16 CAA 12 0056, 2017-Ohio-7570.

_____

STEWART, J.

{¶ 1} In this discretionary appeal from a judgment of the Fifth District Court of Appeals, we consider two propositions of law offered by appellant, the state of Ohio, related to the scope of appellate sentencing review. One proposition of law

asks us to determine whether a court of appeals loses jurisdiction over a case for purposes of addressing the merits of an appeal when a defendant knowingly, voluntarily, and intelligently waives her right to appeal. The other proposition of law asks us to determine whether the appellate criminal-review statute, R.C. 2953.08(G)(2), permits an appellate court to review a sentencing court's findings under R.C. 2929.11 and 2929.12 consistent with *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

{¶ 2} We conclude that the state forfeits its right to argue that a court of appeals is barred from reviewing a sentencing appeal when the state does not timely invoke a defendant's appeal waiver. We also conclude that *Marcum* has no application to consecutive-sentencing cases that are governed by R.C. 2953.08(G)(2). Accordingly, we reverse the Fifth District's judgment and remand this cause to that court to consider appellee Susan Gwynne's assignment of error on consecutive sentences using the correct analysis.

## I. PROCEDURAL HISTORY

{¶ 3} Over the course of approximately eight years, Gwynne stole thousands of items of jewelry and personal memorabilia from 46 identified residents of 12 nursing homes and assisted-living facilities while she was employed as (or while pretending to be employed as) a nurse's aide.

{¶ 4} A grand jury returned an indictment charging Gwynne with 86 felony counts—31 counts of second-degree burglary, 4 counts of third-degree theft, 12 counts of fourth-degree theft, 27 counts of fifth-degree theft, and 12 counts of fifth-degree possessing criminal tools. The grand jury also charged Gwynne with 15 first-degree-misdemeanor counts of receiving stolen property.

{¶ 5} Gwynne entered into a written plea agreement in which she agreed to plead guilty to 17 counts of second-degree burglary, 4 counts of third-degree theft, 10 counts of fourth-degree theft, and the 15 misdemeanor counts of receiving stolen property in exchange for the state dismissing the other 55 counts. She agreed to

pay restitution and waived her right to appeal "including, but not limited to the grounds listed in [R.C.] 2953.08." Delaware C.P. No. 16CR-I-06-0271 (Sept. 23, 2016). The trial court imposed prison terms of three years for each of the second-degree-burglary convictions, 12 months for each of the third-degree-theft convictions, 12 months for each of the fourth-degree-theft convictions, and 180 days for each of the misdemeanor receiving-stolen-property convictions. The court then ordered Gwynne to serve the felony sentences consecutively, for an aggregate sentence of 65 years.

{¶ 6} Gwynne appealed to the Fifth District Court of Appeals and argued that the trial court erred by imposing a sentence that was contrary to Ohio's sentencing statutes and that her aggregate 65-year sentence amounted to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The court of appeals determined that the sentencing court considered the applicable sentencing statutes and made all the required statutory findings. 2017-Ohio-7570, ¶ 12. Nevertheless, the court of appeals analyzed Gwynne's 65-year aggregate sentence under R.C. 2929.11 and 2929.12 and determined that the aggregate sentence was not supported by the record and did not comply with the purposes and principles of felony sentencing. Characterizing the aggregate prison term as a "life sentence" for the then 55-year-old Gwynne, *id*. at ¶ 29, the court of appeals found that the aggregate sentence was excessive and "disproportionate to the conduct and the impact on any and all of the victims either individually or collectively," *id*. at ¶ 30. The court of appeals agreed, however, with "the trial court's findings relating to the necessity of a prison sentence, and that consecutive sentences [we]re warranted." *Id*. at ¶ 31. It vacated some of Gwynne's consecutive sentences, resulting in a new aggregate sentence of 15 years and rendering Gwynne's second assignment of error moot.

## II. ANALYSIS

### A. Forfeiture

{¶ 7} Although Gwynne agreed to plead guilty and to waive her right to appeal, "including, but not limited to the grounds listed in [R.C.] 2953.08," the state did not ask the court of appeals to dismiss Gwynne's direct appeal on that basis, nor did it mention this aspect of the plea agreement in its merit brief filed in the court of appeals. The court of appeals raised the issue on its own, stating: "Because there was no agreement as to sentence in this matter, we find [that Gwynne] has not waived her right to appeal her sentence." 2017-Ohio-7570 at ¶ 9, fn. 1. The state maintains that because Gwynne's waiver of her right to appeal deprived the court of appeals of subject-matter jurisdiction, the Fifth District's decision is void.

{¶ 8} The parties to a plea agreement may neither waive nor confer subject-matter jurisdiction on a court of appeals. A court of appeals

> shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district, except that courts of appeals shall not have jurisdiction to review on direct appeal a judgment that imposes a sentence of death.

Ohio Constitution, Article IV, Section 3(B)(2); *see also In re M.M.*, 135 Ohio St.3d 375, 2013-Ohio-1495, 987 N.E.2d 652, ¶ 21.

{¶ 9} R.C. 2953.08(A) grants a court of appeals subject-matter jurisdiction to hear a defendant's appeal of a felony sentence as a matter of right. Only the legislature may grant or divest the court of appeals of that jurisdiction,[1] so the Fifth

---

1. An example of an instance in which the General Assembly limited a court of appeals' ability to consider an appeal from a sentence is contained in R.C. 2953.08(D)(1), which states that "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is

District's subject-matter jurisdiction to consider Gwynne's sentence was unaffected by the terms of the plea bargain.

{¶ 10} The state forfeited its argument that Gwynne should be held to the terms of the plea bargain because it failed to bring that issue to the attention of the court of appeals. An argument is forfeited when it is not timely asserted. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21. The purpose of the forfeiture rule is to encourage parties to call the court's attention to an error at a time when the error can be " 'avoided or corrected.' " *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. The forfeiture rule is thus one that fosters judicial economy. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 23.

{¶ 11} The appellate rule of forfeiture applies to any party claiming error, including the state. *See State v. Jones*, 7th Dist. Mahoning No. 10 MA 118, 2011-Ohio-3404, ¶ 23. Had the state filed in the court of appeals a motion to dismiss Gwynne's appeal before briefing commenced, a favorable ruling on the motion (and we express no opinion on the merits of such a motion) would have prevented the appeal from going forward, thus promoting judicial economy.

{¶ 12} We also reject the state's assertion that the court of appeals should have enforced Gwynne's appeal waiver on its own initiative. The duty to advocate for enforcing rights arising under the plea agreement belongs to the state; it was not incumbent on the court of appeals to raise the issue. Accordingly, we will not consider whether Gwynne waived her right to appeal.

---

authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." We have held that R.C. 2953.08(D)(1) is "a statutory limit on a court of appeals' jurisdiction to hear an appeal." *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 22.

**B. Sentencing**

{¶ 13} The substantive sentencing issue raised by the state is whether the court of appeals should have reviewed Gwynne's consecutive sentences based on the principles and purposes of felony sentencing set forth in R.C. 2929.11 and 2929.12.

{¶ 14} The court of appeals reviewed Gwynne's sentence under R.C. 2929.11 and 2929.12 based on its reading of this court's decision in *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23, in which we stated:

> We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*See* 2017-Ohio-7570 at ¶ 19-20.

{¶ 15} Paragraph 23 of *Marcum* has no application to this case. *Marcum* involved a challenge to the length of a nonmaximum sentence for a *single* count. *Marcum* at ¶ 4. Gwynne did not challenge the length of any of her felony sentences—none of which were maximum terms—that she received for the individual counts. Nor did Gwynne argue that her consecutive sentences were "contrary to law," because, as the court of appeals noted, the sentencing court made

the findings required by R.C. 2929.14(C)(4)[2] before ordering that the sentences be served consecutively. 2017-Ohio-7570 at ¶ 17; *see, e.g.*, *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37 (failure to make the findings required by R.C. 2929.14(C)(4) and incorporate them into a defendant's sentencing entry renders the sentence contrary to law). Rather, Gwynne challenged the overall length of her sentence based on the sentencing court's decision to run the sentences on each individual count consecutively, as permitted by R.C. 2929.14(C)(4). This challenge requires an analysis entirely different than the one used in *Marcum* for determining whether the length of an individual sentence is contrary to law.

{¶ 16} Given the circumstances of this case, Gwynne's only avenue for relief on appeal was to make an argument under R.C. 2953.08(G)(2)(a). Under that provision, a court of appeals may increase, reduce, or otherwise modify a sentence if it clearly and convincingly finds "[t]hat the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code,

---

2. R.C. 2929.14(C)(4) states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

whichever, if any, is relevant." Because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences. *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").

{¶ 17} While R.C. 2953.08(G)(2)(a) clearly applies to consecutive-sentencing review, R.C. 2929.11 and 2929.12 both clearly apply only to *individual* sentences. R.C. 2929.11 speaks in terms of a court imposing "a sentence" for "a felony." Likewise, R.C. 2929.12(A) speaks in terms of a court imposing "a sentence" for "a felony." This language is consistent with our precedent establishing that "[a] sentence is the sanction or combination of sanctions imposed for each *separate, individual offense*." (Emphasis added.) *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, paragraph one of the syllabus. Consecutive service may not be ordered under R.C. 2929.14(C)(4) until the sentencing judge imposes a prison term for each individual count, and the judge must first impose a sentence for each count by considering the purposes and principles of felony sentencing under R.C. 2929.11 and 2929.12.

{¶ 18} The Fifth District erred by reviewing Gwynne's consecutive sentences under R.C. 2929.11 and 2929.12. The court should have analyzed Gwynne's consecutive sentences for compliance with R.C. 2929.14(C)(4). Any use of the analysis that we provided in *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, is outside the scope of this appeal.

{¶ 19} The court of appeals determined that Gwynne's consecutive sentences were "appropriate" and "warranted," but it used the wrong statutory provision to make that determination. When a court of appeals employs the wrong analysis, we ordinarily remand the cause and instruct the court to use the correct

analysis. *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 33 ("Ordinarily, upon a determination that the courts below applied the wrong legal standard, we would remand the matter to the * * * court of appeals to consider the evidence under the correct legal standard"). And although the court of appeals said that Gwynne does not "argue the court failed to make the appropriate findings," it also stated in the same paragraph that she disagreed with "the trial court's consecutive sentence findings pursuant to R.C. 2929.14(C)(4)." 2017-Ohio-7570 at ¶ 17. We interpret the court of appeals' decision as stating that while Gwynne had conceded that the sentencing judge made the requisite R.C. 2929.14(C)(4) findings to order consecutive sentences, she was contesting whether the record supported those findings. We think that this interpretation is warranted given the court of appeals' statement that Gwynne "argues the trial court's findings were erroneous, and consecutive sentences were not appropriate," 2017-Ohio-7570 at ¶ 17.

{¶ 20} We therefore reverse the Fifth District's judgment and remand this cause to that court with instructions to consider Gwynne's assignment of error on consecutive sentences using the standard of review set forth under R.C. 2953.08(G)(2).

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and FRENCH, J., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by DEWINE, J.

FISCHER, J., concurs in judgment only.

DONNELLY, J., dissents, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 21} To get to its result—for no other reason than because it wants to go there—the lead opinion exceeds its authority by ignoring our precedent, going beyond the propositions of law and legal issues before us, purposefully misreading the Fifth District's opinion, and allowing the continued propagation of incorrect dicta. Therefore, I write separately.

{¶ 22} I agree with the lead opinion that appellant, the state of Ohio, has forfeited its argument that appellee, Susan Gwynne, waived appellate review of her sentence and that R.C. 2953.08(G)(2) does not authorize a court of appeals to use R.C. 2929.11 and 2929.12 for purposes of reviewing a trial court's consecutive-sentence findings. Having decided those issues that are properly before us, and with this court's caselaw supporting those holdings, the appropriate remand would be to direct the Fifth District to consider Gwynne's remaining assignment of error that the court of appeals did not address—i.e., whether Gwynne's 65-year sentence is in violation of the Eighth Amendment's prohibition against cruel and unusual punishments, *see* 2017-Ohio-7570, ¶ 16. Accordingly, I concur in judgment only.

**The lead opinion ignores this court's sentencing jurisprudence**

{¶ 23} Today's lead opinion will neither bring clarity to the law nor provide guidance to lower tribunals because it is at loggerheads with our decision in *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. Indeed, the lead opinion concludes:

> We interpret the court of appeals' decision as stating that while Gwynne had conceded that the sentencing judge made the requisite R.C. 2929.14(C)(4) findings to order consecutive sentences, she was contesting whether the record supported those findings. We think that this interpretation is warranted given the court of appeals' statement that Gwynne "argues the trial court's findings were

erroneous, and consecutive sentence were not appropriate," 2017-
Ohio-7570 at ¶ 17.

Lead opinion at ¶ 19.

{¶ 24} In *Bonnell*, we considered the issue whether "the trial court must make the required findings enumerated in R.C. 2929.14(C)(4) and give reasons supporting those findings when imposing consecutive sentences on an offender." *Bonnell* at ¶ 15. This court concluded that while a sentencing court is required to make the factual findings enumerated in R.C. 2929.14(C)(4), *id*. at ¶ 23, it is not required to give or state reasons supporting the decision to impose consecutive sentences, *id*. at ¶ 27. Here, the trial court made the R.C. 2929.14(C)(4) findings and the court of appeals, after reviewing the record, found that consecutive sentences were warranted. Therefore, the court of appeals has already reviewed the imposition of consecutive sentences and no further analysis is required. The lead opinion's conclusion stating otherwise will create confusion within and among Ohio's trial courts and courts of appeals.

### Consecutive sentences are not before this court

{¶ 25} This court's remand order requiring further consideration of Gwynne's consecutive sentences is also beyond the authority of this court. We accepted the state's appeal on just two propositions of law. The first proposition of law asked this court to determine whether R.C. 2953.08(G)(2) permits an appellate court to use R.C. 2929.11 and 2929.12 to review a sentencing court's consecutive-sentence findings. The second proposition of law asked this court to determine whether a defendant's knowing, intelligent, and voluntary waiver of her right to appeal as part of her plea agreement divests an appellate court of jurisdiction to address the merits of a subsequent appeal.

{¶ 26} Gwynne did not file a cross-appeal challenging the court of appeals' finding that "consecutive sentences [were] appropriate," 2017-Ohio-7570 at ¶ 17,

or the court of appeals' holding that it "agree[d] * * * with the trial court's findings relating to the necessity of a prison sentence, and that consecutive sentences [were] warranted," *id*. at ¶ 31. Therefore, this court's decision to remand this case to the court of appeals to review Gwynne's consecutive sentences is nothing more than an "exercise of raw judicial power." *Doe v. Bolton*, 410 U.S. 179, 222, 93 S.Ct. 762, 35 L.Ed.2d 147 (1973) (White, J., dissenting); *see also Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The lead opinion addresses an issue that is not before this court to avoid affirming the judgment of the trial court. The problem with the lead opinion's conclusion is that the trial court's judgment complies with Ohio's sentencing statutes and this court's sentencing jurisprudence and is therefore sound.

### Gwynne's assignment of errors before the court of appeals

{¶ 27} In evaluating Gwynne's first assignment of error, the court of appeals stated that Gwynne "does not * * * argue the court failed to make the appropriate findings. Instead, she disagrees with the trial court's seriousness and recidivism findings pursuant to R.C. 2929.11 and 2929.12, *as well as* the trial court's consecutive sentence findings pursuant to R.C. 2929.14(C)(4)." (Emphasis added.) 2017-Ohio-7570 at ¶ 17.

{¶ 28} The phrase "as well as" indicates that the court of appeals interpreted Gwynne's first assignment of error as asserting two separate arguments. In her first argument, Gwynne asserted that the trial court's seriousness and recidivism findings pursuant to R.C. 2929.12 were not supported by the record and that her sentence did not comport with the purposes and principles of felony sentencing pursuant to R.C. 2929.11. In Gwynne's second argument, she disagreed with the trial court's consecutive-sentence findings pursuant to R.C. 2929.14(C)(4). For reasons of simplicity, I address them in the reverse order.

*R.C. 2953.08(G)(2) review of the imposition of consecutive sentences*

{¶ 29} The court of appeals conducted the R.C. 2929.14(C)(4) consecutive-sentence review that is required by R.C. 2953.08(G)(2). It did not invalidate the imposition of every consecutive sentence that the trial court imposed; it found that consecutive sentences were appropriate and warranted but also modified the trial court's sentencing order as it deemed appropriate:

> We agree, however, with the trial court's findings relating to the necessity of a prison sentence, and that consecutive sentences are warranted.
>
> We therefore modify appellant's sentence pursuant to R.C. 2953.08(G)(2) as follows:
>
> In regard to the offenses of burglary in violation of Section 2911.12(A)(2) of the Ohio Revised Code, each being a felony of the second degree as charged in Counts 1, 4, 6, 17, 21, 23, 25, 28, 30, 32, 42, 45, 53, 63, 69, 71, and 88, we order that appellant be sentenced to 3 years on each count as previously ordered by the trial court. However, we order that Counts 1, 4, and 6 be served consecutively to each other and concurrently with Counts 17, 21, 23, 25, 28, 30, 32, 42, 45, 53, 63, 69, 71, and 88 for a term of nine years of incarceration for these counts.
>
> In regard to the offenses of theft in violation of Section 2913.02(A)(1) of the Ohio Revised Code, each being a felony of the fourth degree as charged in Counts 10, 13, 16, 20, 35, 40, 48, 50, 52, and 56, we order that appellant be sentenced to 12 months on each count as previously ordered by the trial court. However, we order that Counts 10, 13, and 16 be served consecutively to each other and

concurrently with Counts 20, 35, 40, 48, 50, 52, and 56, for a term of three years of incarceration for these counts.

In regard to the offenses of theft in violation of Section 2913.02(A)(1) of the Ohio Revised Code, each being a felony of the third degree as charged in Counts 37, 58, 61, and 67, we order that appellant be sentenced to 12 months on each count as previously ordered by the trial court. However, we order that Counts 37, 58, and 61 be served consecutively to each other and concurrently with Count 67, for a term of three years of incarceration for these counts.

In regard to all misdemeanor counts of receiving stolen property, we make no modification.

Finally, we order that Counts 1, 4, 6, 10, 13, 16, 37, 58, and 61 be served consecutively to each other for an aggregate term of 15 years of incarceration. Given the facts of this case, we find 15 years incarceration consistent with the principles and purposes of sentencing.

2017-Ohio-7570 at ¶ 31-37.

{¶ 30} Surely, an appellate court need not chew its cabbage twice— particularly once the appellate court has enunciated the appropriate standard of review and expressly stated why it chose to modify a defendant's consecutive sentences pursuant to R.C. 2953.08(G)(2). Here, the Fifth District has already definitively held that consecutive sentences were appropriate and warranted. The appellate court just erroneously believed that it was permitted to vacate *some* of those consecutively imposed sentences and order Gwynne to serve them concurrently.

*R.C. 2929.11 and 2929.12 and "contrary to law"*

{¶ 31} Here is how the Fifth District got to its conclusion that it was permitted to vacate some of the "warranted" consecutively imposed sentences. In reviewing felony sentences, the court of appeals stated that it applies the standard of review set forth in R.C. 2953.08(G)(2).

> That section specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds that "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant" *or "the sentence is otherwise contrary to law."*

(Emphasis added.) 2017-Ohio-7570 at ¶ 18, quoting R.C. 2953.08(G)(2), citing *State v. Velazquez*, 5th Dist. Muskingum No. CT2015-0043, 2016-Ohio-5203, ¶ 20.

{¶ 32} Thereafter, the Fifth District relied on the following superfluous paragraph from this court's decision in *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231:

> "We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the

appellate court finds by clear and convincing evidence that the record does not support the sentence."

2017-Ohio-7570 at ¶ 19, quoting *Marcum* at ¶ 23.

{¶ 33} The Fifth District then held that " 'an appellate court may increase, reduce, or otherwise modify a sentence * * * if the record does not support the sentencing court's findings under * * * R.C. 2953.08(G)(2), *as well as under R.C. 2929.11 and 2929.12.*' " (Emphasis added.) *Id.* at ¶ 20, quoting *State v. Jones*, 8th Dist. Cuyahoga Nos. 103290 and 103302, 2016-Ohio-7702, ¶ 102.

{¶ 34} After defining and applying the clear-and-convincing-evidence standard, the court of appeals found Gwynne's 65-year aggregate sentence to be *contrary to law*. *Id.* at ¶ 21. Using as guideposts for its analysis the principles and purposes of felony sentencing as set forth in R.C. 2929.11(A) and 2929.11(B) and the seriousness and recidivism factors in R.C. 2929.12, the Fifth District held, "We do not minimize the seriousness of [Gwynne's] conduct. On this record, however, we find the stated prison term of 65 years *does not comply with the purposes and principles of felony sentencing*." (Emphasis added.) *Id.* at ¶ 25. Thereafter, the appellate court conducted a de novo review of Gwynne's sentence under R.C. 2929.12, made independent findings, and held that although Gwynne's 65-year aggregate sentence was not supported by clear and convincing evidence, *id.* at ¶ 30, running some of her sentences consecutively was warranted, *id.* at ¶ 31. Although part of the court of appeals' analysis was correct, another part was wrong.

{¶ 35} The court of appeals did not lose its way when reviewing Gwynne's consecutive sentences pursuant to R.C. 2953.08(G)(2). As stated above, the appellate court enunciated the proper standard of review and concluded as a matter of law that consecutive sentences were appropriate and warranted and imposed consecutive sentences itself when it modified the sentence.

{¶ 36} The court of appeals did, however, lose its way when it relied on our errant language in *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23, and the Eighth District's interpretation of that paragraph in *Jones,* 2016-Ohio-7702, to find that Gwynne's sentence was contrary to law. From those flawed decisions, the court of appeals gleaned that it had the ability to conduct an independent review of the record and use R.C. 2929.11 and 2929.12 to modify Gwynne's sentence.

{¶ 37} As explained above, the court of appeals held that although running some of Gwynne's sentences consecutively was appropriate, "*the record [did] not support the trial court's sentence under R.C. 2929.11 and 2929.12*" (emphasis added), 2017-Ohio-7570 at ¶ 17, and that under the facts of Gwynne's case, a 15-year prison term was "*consistent with the principles and purposes of sentencing*" (emphasis added), *id*. at ¶ 37. Without question, the court of appeals relied on paragraph 23 in *Marcum*, including that paragraph's flawed statements pertaining to R.C. 2929.11 and 2929.12, for its purported authority to find that " 'the sentence is otherwise contrary to law,' " *id*. at ¶ 18, quoting R.C. 2953.08(G)(2), and to modify Gwynne's consecutive sentences, changing her aggregate prison term from 65 years to 15 years. It did not have that ability.

### *Marcum* is dictum

{¶ 38} The problem with the court of appeals' reliance on paragraph 23 in *Marcum*, in support of its ability to review the trial court's application of the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, is that that paragraph is dictum.

{¶ 39} *Marcum* focused on a certified-conflict question that asked, " '[D]oes the test outlined by the [c]ourt in *State v. Kalish*, [120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124] apply in reviewing felony sentences after the passage of R.C. 2953.08(G)?' " *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 6, quoting *State v. Marcum*, 141 Ohio St.3d 1453, 2015-Ohio-

239, 23 N.E.3d 1195. In *Kalish,* the lead opinion set forth a "two-step approach" to appellate review of criminal sentences. *Kalish* at ¶ 4. "First, [the reviewing court] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Id.* Accordingly, in *Marcum*, we abrogated the two-pronged test that had been set out in *Kalish* and answered the certified question in the negative, holding that an appellate court must adhere to the "plain language of R.C. 2953.08(G)(2)," *Marcum* at ¶ 7, and that an appellate court may "vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law," *id.* at ¶ 1.

{¶ 40} In reaching that decision, this court described the history of R.C. 2953.08, the history of appellate review of felony sentences, and how the lead opinion in *Kalish* fit within the historical context. *Id*. at ¶ 12-16. In expressly rejecting certain holdings in *Kalish*, we held that the language of "R.C. 2953.08(G)(2) is unambiguous and definite." *Id*. at ¶ 9. And "[w]hen the language is unambiguous and definite, we apply it as written." *Id*. at ¶ 8.

{¶ 41} After we declared in *Marcum* that R.C. 2953.08(G)(2) was unambiguous and definite, we should have simply applied it to the facts of that case. Unfortunately, we went beyond the certified question and made some additional statements, which are the cause of the controversy in this case. The problem is that whether appellate review of the factors in R.C. 2929.11 and 2929.12 is permissible pursuant to the "contrary to law" language in R.C. 2953.08(G) was not before us in *Marcum* and our ruminating on the issue was dictum. "Obiter dictum" is " 'an incidental and collateral opinion uttered by a judge, and therefore (as not material to his decision or judgment) not binding.' " *State ex rel. Gordon v. Barthalow*, 150

18

Ohio St. 499, 505-506, 83 N.E.2d 393 (1948), quoting *Webster's Second New International Dictionary* 1679 (1953). Now, instead of simply admitting our misstatement, the lead opinion attempts the grand illusion of distinguishing *Marcum* "to [a] vanishing point, creating an illusion of certainty in the law while leaving only a shadow of an ancient landmark," *United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 406, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965) (Douglas, J., dissenting). However, "[a]s far as I am aware, the public is not under the illusion that we are infallible. I see little harm in admitting that we made a mistake * * *." *Dickerson v. United States*, 530 U.S. 428, 464, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (Scalia, J., dissenting).

{¶ 42} Beyond the lead opinion's attempt to distinguish *Marcum* is its radical step to discredit the entire authority of *Marcum* under these facts. The lead opinion concludes that "[a]*ny use of the analysis that we provided in Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.2d 123, *is outside the scope of this appeal.*" (Emphasis added.) Lead opinion at ¶ 18. Really? What about our determination that "R.C. 2953.08(G)(2) is unambiguous and definite"? *Marcum* at ¶ 9. Or our statement of law that "[w]hen the language [of a statute] is unambiguous and definite, we apply it as written"? *Id*. at ¶ 8.

{¶ 43} If the lead opinion would simply acknowledge that the language in paragraph 23 of *Marcum* is dictum and instruct the court of appeals that it should not follow that paragraph of *Marcum*, we could make the expedient determination that R.C. 2953.08(G)(2) does not authorize appellate review of a trial court's R.C. 2929.11 and 2929.12 findings and move on. Because the lead opinion resists the obvious, it muddies the waters of Ohio's sentencing jurisprudence even more.

**Conclusion**

{¶ 44} To bring clarity to the law and aid Ohio's trial courts and courts of appeals, I would (1) hold that paragraph 23 in *Marcum* is dictum, (2) hold that R.C. 2953.08(G)(2) is plain and unambiguous and an appellate court is without authority

to review a sentencing court's determinations under R.C. 2929.11 and 2929.12, (3) reverse the portion of the Fifth District's judgment modifying Gwynne's consecutive sentences and reinstate the sentence that the trial court imposed, (4) hold that the state forfeited the argument that Gwynne waived appellate review of her sentence, and (5) remand the cause to the court of appeals for consideration of only Gwynne's second remaining assignment of error—that her 65-year sentence violated the Eighth Amendment's prohibition against cruel and unusual punishments, especially since the Fifth District already affirmed Gwynne's consecutive sentences based on the determination that the trial court made the consecutive-sentence findings as required by R.C. 2929.14(C)(4). For all the foregoing reasons, I concur in judgment only.

DEWINE, J., concurs in the foregoing opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 45} I respectfully dissent. There is only one thing that informs the public that our criminal-justice system is not driven by blind vengeance, and that is a meaningful and lawful criminal sentence: a sentence that is clearly and convincingly supported by the record, proportional to a defendant's conduct, and carefully weighed in accordance with all relevant law. R.C. 2929.11 and 2929.12 are the cornerstones of Ohio's sentencing laws and relevant to every criminal sentence imposed by a trial court. Susan Gwynne's 65-year prison sentence is contrary to those laws, and the court of appeals properly exercised its authority under R.C. 2953.08(G)(2)(b) when it modified Gwynne's sentence from 65 years to 15 years. Accordingly, I would affirm the judgment of the court of appeals.

## I. Appellate Review under R.C. 2953.08(G)(2)

{¶ 46} Today's lead and concurring opinions conclude that R.C. 2953.08(G)(2) does not permit a court of appeals to review whether a defendant's

consecutive sentences imposed by a trial court comports with the purposes of felony sentencing articulated in R.C. 2929.11 or whether a transcript of the defendant's sentencing hearing reflects that the trial court properly considered the seriousness and recidivism factors listed in R.C. 2929.12. For the reasons that follow, I believe that that conclusion is not supported by the relevant law.

### A. Statutory Principles

{¶ 47} Before imposing a sentence on a defendant, a trial court must consider the purposes of felony sentencing set forth in R.C. 2929.11 and must then consider the seriousness and recidivism factors listed in R.C. 2929.12 to determine how best to accomplish the sentencing purposes. *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 11-13, *abrogated on other grounds*, *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. At the time that Gwynne was sentenced, R.C. 2929.11(A) stated that the two overriding purposes of felony sentencing were to protect the public and punish the offender by "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." 2011 Am.Sub.H.B. No. 86.[3]

{¶ 48} The lead and concurring opinions appear to be fixated on *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, and what that decision does and does not say. Yet, *Marcum* simply acknowledged that a court of appeals has the authority to review whether a felony sentence comports with the purposes of felony sentencing, *see* R.C. 2929.11, and the factors to be considered in felony sentencing, *see* R.C. 2929.12. My view is that an appellate court's authority to review a felony sentence flows not from *Marcum* but, rather, from the text of the operative constitutional and statutory provisions.

---

3. There are now three overriding purposes set forth in R.C. 2929.11. 2018 Am.Sub.S.B. No. 66 added to R.C. 2929.11(A) "promot[ing] the effective rehabilitation of the offender" as a third "overriding purpose[]."

{¶ 49} The Ohio Constitution, Article IV, Section 3(B)(2), provides that the "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the courts of appeals within the district." As this court has long recognized, "as may be provided by law" means that the General Assembly may prescribe how a court of appeals may exercise the authority conferred upon it by the Ohio Constitution. *Cincinnati Polyclinic v. Balch*, 92 Ohio St. 415, 111 N.E. 159 (1915), paragraph one of the syllabus. Accordingly, the General Assembly has enacted several statutory provisions that guide our analysis.

{¶ 50} R.C. 2953.02 expressly provides that "the judgment or final order of a court of record inferior to the court of appeals may be reviewed in the court of appeals."

{¶ 51} R.C. 2953.07(A) states:

> Upon the hearing of an appeal other than an appeal from a mayor's court, the appellate court may affirm the judgment or reverse it, in whole or in part, or modify it, and order the accused to be discharged or grant a new trial. The appellate court may remand the accused for the sole purpose of correcting a sentence imposed contrary to law, provided that, on an appeal of a sentence imposed upon a person who is convicted of or pleads guilty to a felony that is brought under section 2953.08 of the Revised Code, division (G) of that section applies to the court.

{¶ 52} Under R.C. 2953.08(A)(4), a defendant who is convicted of or pleads guilty to a felony may appeal her sentence as a matter of right on the grounds that "[t]he sentence is contrary to law."

{¶ 53} In this case, Gwynne argued on appeal that her sentence was contrary to law because it was imposed in contravention of Ohio's sentencing statutes, specifically R.C. 2929.11 and 2929.12. Consequently, R.C. 2953.08(G) governed the issues that Gwynne asserted in her appeal. *See* R.C. 2953.07.

{¶ 54} R.C. 2953.08(G)(2) provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds *either* of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) *That the sentence is otherwise contrary to law.*

(Emphasis added.)

{¶ 55} In *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 21, we acknowledged that "[b]oth the state and the defendant have an appeal as of right if a sentence is 'contrary to law.' "

{¶ 56} Nothing in R.C. 2953.08 expressly forecloses appellate courts from reviewing consecutive sentences and using the principles and factors in R.C. 2929.11 and 2929.12 as part of the analysis for such a review. To the contrary, R.C. 2953.08(G)(2) directs Ohio's appellate courts to "review the record, including the findings underlying the sentence or modification given by the sentencing court." While R.C. 2953.08(G)(2)(a) identifies particular findings that are subject to appellate review, R.C. 2953.08(G)(2) does not limit appellate review to those findings only. Instead, R.C. 2953.08(G)(2) simply requires the appellate court to find clearly and convincingly either (a) that the record does not support the particular findings enumerated in R.C. 2953.08(G)(2)(a) *or* (b) that the sentence is "otherwise contrary to law," R.C. 2953.08(G)(2)(b). While the lead and concurring opinions focus their analyses strictly on the findings required under R.C. 2953.08(G)(2)(a), they utterly fail to address an appellate court's authority to review a sentence under R.C. 2953.08(G)(2)(b) that is allegedly "contrary to law."

{¶ 57} And the sentencing considerations prescribed by R.C. 2929.11 and 2929.12 qualify indisputably as *laws* that the General Assembly has directed trial courts to consider before imposing criminal sentences.

{¶ 58} When Gwynne was sentenced, R.C. 2929.11(A) directed that a court sentencing a felony offender "*shall* be guided by the overriding purposes of felony sentencing" and "*shall* consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." (Emphasis added.) 2011 Am.Sub.H.B. No. 86. And R.C. 2929.11(B) stated that a felony sentence "*shall* be reasonably calculated to achieve the two overriding purposes of felony sentencing" set forth in R.C. 2929.11(A). (Emphasis added.) 2011 Am.Sub.H.B. No. 86.

{¶ 59} Separately, R.C. 2929.12(A) provides that unless otherwise required by R.C. 2929.13 or 2929.14, a court imposing a sentence on a felony offender "*shall* consider" the factors set forth in R.C. 2929.12(B) and (C) "relating to the seriousness of the conduct," the factors provided in R.C. 2929.12(D) and (E) "relating to the likelihood of the offender's recidivism," and the factors set forth in R.C. 2929.12(F) pertaining to the offender's military service and "any other factors that are relevant to achieving those purposes and principles of sentencing." (Emphasis added.)

{¶ 60} If a felony sentence fails to comport with the sentencing purposes set forth in R.C. 2929.11 or the seriousness factors listed in R.C. 2929.12, I fail to see why such a sentence should be impervious to appellate review.

{¶ 61} Indeed, R.C. 2929.11(C) states that a court imposing a sentence on a felony offender "shall not base the sentence upon the race, ethnic background, gender, or religion of the offender." Surely, a criminal sentence that was based upon the offender's race, ethnic background, gender, or religion would be "contrary to law." Does this court seriously mean to suggest that even a sentence based on a sentencing court's racial bias would not be subject to appellate review, just because R.C. 2953.08(G)(2) omits any reference to R.C. 2929.11 or because the defendant received consecutive sentences?

{¶ 62} Nothing in the text of R.C. 2953.08(G)(2) forecloses an appellate court from determining whether a sentence is contrary to law in contravention of the sentencing purposes set forth in R.C. 2929.11 or the sentencing factors listed in R.C. 2929.12.

*B. Appellate Review of Consecutive Sentences under R.C. 2953.08*

{¶ 63} The lead opinion concludes that when a court of appeals is reviewing an appeal of consecutive sentences, the appellate court may not consider R.C. 2929.11 or 2929.12 and instead is limited to determining whether the trial court made the requisite findings under R.C. 2929.14(C)(4). While I question whether

that reframing of the issue is even encompassed by the first proposition of law on which we accepted this appeal, I nevertheless believe that the lead opinion's conclusion is not supported by the relevant statutory law.

{¶ 64} The lead opinion states that although Gwynne did not challenge her consecutive sentences for being contrary to law, she "challenged the overall length of her sentence based on the sentencing court's decision to run the sentences on each individual count consecutively, as permitted by R.C. 2929.14(C)(4)." Lead opinion at ¶ 15. According to the lead opinion, "Gwynne's only avenue for relief on appeal" was to argue under R.C. 2953.08(G)(2)(a) that the record did not support the trial court's findings that it had made pursuant to R.C. 2929.14(C)(4). *Id.* at ¶ 16.

{¶ 65} But nothing in the text of R.C. 2953.08(A) suggests that a defendant who has been convicted of or pleaded guilty to more than one felony offense and given consecutive sentences may contest those consecutive sentences only by challenging the trial court's findings under R.C. 2929.14(C)(4). To the contrary, R.C. 2953.08(A) provides that a felony sentence may be appealed for being "contrary to law," which, as I have already indicated, may encompass an argument that the sentence did not comport with the felony-sentencing purposes set forth in R.C. 2929.11 or the seriousness and recidivism factors set forth in R.C. 2929.12, which in turn may appropriately be reviewed by the court of appeals pursuant to R.C. 2953.08(G)(2)(b). By declaring here that Gwynne was limited to challenging the trial court's findings that had been made under R.C. 2929.14(C)(4) and because even Gwynne acknowledged in the court of appeals that the sentencing court recited the "magic words" before imposing consecutive sentences, the lead opinion is actually setting up a straw man just for the court of appeals to knock him down.

{¶ 66} The lead opinion suggests that R.C. 2929.11 and 2929.12 categorically do not apply to the imposition of consecutive sentences because those

statutes apply only when a trial court is imposing a sentence for "a felony"—in the singular—and not when imposing sentences for multiple felonies. But the use of the singular "a felony" has no talismanic significance of legislative intent. Surely, no one would seriously suggest that the sentencing hearing that is required by R.C. 2929.19(A) for an offender who is convicted of or pleads guilty to "a felony" does not have to occur for an offender who is convicted of or pleads guilty to multiple felonies.

{¶ 67} We have repeatedly held that felony-sentencing statutes must be read as a whole. *State v. Amos*, 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528, ¶ 12. R.C. Chapter 2929 specifies which criminal offenses are subject to mandatory sentences and which criminal offenses are subject to discretionary sentences and what a trial court must do before imposing consecutive sentences. And R.C. 2929.12(A) expressly provides that "a court that imposes a sentence *under this chapter* upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing" set forth in R.C. 2929.11 and in exercising that discretion, "the court shall consider" the seriousness and recidivism factors set forth in R.C. 2929.12. (Emphasis added.) Thus, by the express language of R.C. 2929.12(A), R.C. 2929.11's sentencing purposes and R.C. 2929.12's seriousness and recidivism factors are no less operative when a trial court is imposing consecutive sentences than when a trial court is imposing an individual sentence. Regardless of whether the lead opinion has unwittingly concluded that a court of appeals may review a sentencing court's application of those principles and factors for a single felony sentence but not for multiple felony sentences, it provides no plausible rationale for drawing such a distinction.

{¶ 68} Beyond that, in my view, the lead opinion's suggestion that the legislature intended for R.C. 2953.08(G)(2)(a) to restrict appellate review of

27

consecutive sentences to the sufficiency of the findings required by R.C. 2929.14(C)(4) reflects a basic misreading of R.C. 2953.08(G) as a whole.

{¶ 69} In particular, R.C. 2953.08(G)(2)(a) would appear to tie back to R.C. 2953.08(G)(1), which reads:

> *If* the sentencing court was required to make the findings required by division (B) or (D) of section 2929.13 or division (I) of section 2929.20 of the Revised Code, or to state the findings of the trier of fact required by division (B)(2)(e) of section 2929.14 of the Revised Code, relative to the imposition or modification of the sentence, and *if* the sentencing court failed to state the required findings on the record, the court hearing an appeal under division (A), (B), or (C) of this section shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings.

(Emphasis added.)

{¶ 70} Closely tracking that language, R.C. 2953.08(G)(2)(a) authorizes an appellate court to increase, reduce, or otherwise modify a sentence, or vacate the sentence and remand for a resentencing hearing, if it clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), R.C. 2929.20(I), or R.C. 2929.14(B)(2)(e) or (C)(4).

{¶ 71} In short, R.C. 2953.08(G)(2)(a) would appear to do little more than provide a range of remedies that a court of appeals may grant *if* the record does not support the statutory findings made under the given enumerated sections. I fail to see how that remedial provision—which is separate and distinct from R.C. 2953.08(G)(2)(b), the remedial provision for sentences that are contrary to law— should be construed to mean that the only argument that is available for

consecutive-sentence appeals is that the requisite findings were not made under R.C. 2929.14(C). And respectfully, I am unable to subscribe to assembly-line jurisprudence under which a case is to be determined by recharacterizing an argument just to force it into a particular analytical construct so that it may then be decided simply by making sure that the right boxes have been checked off.

{¶ 72} I am further mystified by this court's decision to remand this case to the court of appeals to apply the correct standard of review for consecutive sentencing, lead opinion at ¶ 19. The court of appeals in fact *upheld* the trial court's consecutive-sentence findings under R.C. 2929.14(C), but whereas the trial court ran all 31 felony counts consecutively, the court of appeals ordered nine felony counts to run consecutively and ordered the remaining 22 felony counts to run concurrently. By remanding this case to the court of appeals, what instruction are we giving it to ensure that it does not repeat its error?

{¶ 73} I regret to say that the lead opinion's approach to this case will not give Ohio's trial or appellate courts the clear and focused guidance that should be provided to every court that has the solemn duty to impose and review criminal sentences in this state.

## II. Gwynne's Sentence is Contrary to Law

{¶ 74} If you are interested in this case, and I am assuming you are to have read this far, then a review of the lead and concurring opinions causes me to fear that in a shortsighted rush to reach a copasetic result, we have turned a blind eye and a deaf ear to the issue before us as presented by the facts of this case.

{¶ 75} Gwynne's crimes caused pain and anguish to her vulnerable, elderly victims and their families. Sentimental items were stolen. Gwynne's crimes did not occur on one isolated date or at one isolated location. Her criminal conduct occurred over the span of approximately eight years. And the police were able to

identify 46 victims from at least 12 different nursing homes and assisted-living facilities.

{¶ 76} Certainly, the number of victims is material, and the extent of material harm that was suffered by those victims is likewise relevant.

{¶ 77} For the most part, according to the record, Gwynne did not sell or destroy her victims' possessions. Instead, she accumulated over 3,000 articles of stolen property and kept them in seven large storage bins and an overflowing dresser in her home. The items that Gwynne stole—i.e., mementos such as dog tags, military medals, family photos, and baby bracelets—are not items commonly targeted by thieves for monetary gain. Additionally, for the property that could not be recovered, Gwynne agreed to pay restitution in the amount of $9,610. While Gwynne may very well have been a hoarder or suffering from some serious mental illness, she hardly strikes me as a hardened criminal who needs to stay in prison until she is 120 years old in order to protect the public and that a 65-year prison term is the best use of our limited state and local resources.

{¶ 78} Accepting responsibility for her crimes, Gwynne entered the sometimes opaque process of plea bargaining, and in exchange for pleading guilty, the state offered to reduce the number of charges for which she was indicted. At Gwynne's plea hearing, although the trial court stated, "I can sentence you to whatever penalty I wish within the range spelled out in Ohio law for these various offenses," its colloquy was peppered with the phrases "if sent to prison by me" and "[i]f I did send you to prison," and the trial court took great care to discuss judicial release, postrelease control, and restitution. This language, combined with the state's acquiescence to the preparation of a presentence-investigation report, certainly implied the prospect of a community-control sanction being on the table as well as a lesser prison sentence. In light of what ultimately occurred to Gwynne, those representations most certainly offered false hope to her.

{¶ 79} Gwynne pleaded guilty to 17 counts of burglary (felonies of the second degree), 4 counts of theft (felonies of the third degree), 10 additional counts of theft (felonies of the fourth degree), and 15 counts of receiving stolen property (misdemeanors of the first degree).

{¶ 80} The state and Gwynne could not agree to a jointly recommended sentence. During the oral argument before this court, Gwynne's trial counsel indicated that in the course of pretrial negotiations, he asked the state to agree to recommend an aggregate prison sentence of three to four years but that the state wanted a sentence in the range of 10 to 15 years. If this is true, in its sentencing memorandum, the state inexplicably recommended two wildly divergent sentences: a 42-year sentence ("the minimum prison term on each felony conviction, all served consecutive[ly] to each other") or two years ("[a]t the very least, [Gwynne] should be sentenced to the minimum sentences on each felony, to be served concurrently"). In contrast, defense counsel advocated for community control or, if a prison term was imposed, concurrent sentences.

{¶ 81} Thus, on the date of sentencing, Gwynne arrived in court having no idea whether she would go home that day or die in prison. With no certainty as to what sentence she would receive, Gwynne was like a lamb led to slaughter. Gwynne wound up with a 65-year prison sentence—a 23-year increase over what even the state had recommended—a sentence the court of appeals aptly described as a life sentence for Gwynne, who was 55 at the time of sentencing.[4] Gwynne left her sentencing hearing knowing that she would die in prison. Some bargain.

{¶ 82} When exactly did this sentence go off the tracks? When did it become acceptable in a "fair and just" legal system that a defendant, who enters into a plea agreement with a reasonable expectation of receiving some kind of

---

4. It is unclear where in the sentencing statutes the trial court, the supposed neutral arbiter in the adversarial process, would find guidance to elevate a sentence so far above the maximum that the state had requested.

benefit for pleading guilty, is not provided with any indication as to what position the state will be taking at sentencing? Ohio's laws and Rules of Criminal Procedure do not allow trial by ambush. So why then would we permit it at sentencing? Is it any wonder that large segments of our society continue to describe our criminal-justice system as broken?

{¶ 83} The General Assembly wisely enacted R.C. 2929.11 and 2929.12 to guide busy trial courts in carrying out their most important duty, that of sentencing criminal defendants. A modern-day trial court has aptly been compared, in legal circles, to a hospital emergency room in terms of the stress that is placed on the people who are there on a daily basis—i.e., the judges, attorneys, and litigants. Crowded dockets, multiple plea and sentencing hearings set on the same day, and factual scenarios with sympathetic victims all have the ability to trigger strong feelings from every party involved. These varied and chaotic circumstances all pose the risk of distracting trial courts from their obligation to consider the core purposes of sentencing before taking away a defendant's liberty.

{¶ 84} Taking factors like these into account, the court of appeals determined that "the understandably strong feelings must be tempered by a sanction clearly and convincingly based upon the record to effectuate the purposes of sentencing." 2017-Ohio-7570, ¶ 30. And the court concluded that the 65-year sentence that the trial court imposed did not do so. In fact, the appellate court found the sentence "disproportionate to the conduct and the impact on any and all of the victims either individually or collectively" and that the sentence "runs the risk of lessening public respect for the judicial system." *Id*. The court also stated that "[t]he imposition of a 65 year sentence for a series of non-violent theft offenses for a first-time felon shocks the consciousness. We therefore find by clear and convincing evidence that the record does not support the sentence." *Id*.

{¶ 85} I agree with the appellate court that a 65-year sentence for a series of nonviolent theft offenses for a first-time felon shocks the conscience and runs the risk of lessening the public's respect for Ohio's judicial system.

{¶ 86} It is unfathomable to me how anyone could conclude that Gwynne's sentence was proportional to her conduct. Any attorney practicing criminal law in this state could cite countless examples of defendants who have committed murder or rape and have received far less time in prison. For Gwynne to serve her full sentence, she must live to the age of 120. Her criminal record consisted of a few misdemeanor offenses. None of Gwynne's convictions were first-degree felonies. And although her 17 convictions for burglary were second-degree felonies and carried a presumption in favor of a prison term, R.C. 2929.13(D)(1), the remaining 29 convictions did not.

{¶ 87} I fear for the unintended consequences that today's decision will have on defendants who, like Gwynne, receive excessive and disproportionate sentences. Without appellate review of felony sentences in accordance with R.C. 2929.11 and 2929.12, a 65-year sentence for a case involving multiple property crimes may become the rule rather than the exception. By shunning *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, and essentially eliminating meaningful review of sentences by Ohio's appellate courts, this court has taken away an important check that the General Assembly intended for Ohio's criminal-justice system.

{¶ 88} We have missed the opportunity to provide clear guidance to the lower courts. Although an individual sentence for an individual offense may not fall outside the statutory range for the offense, the sentence may still be contrary to law if the record does not support the findings the trial court made pursuant to R.C. 2929.11, 29291.12, or both. Consistency and proportionality should be the hallmarks of every felony sentence imposed. Consecutive and lengthy sentences

must be reserved for the worst offenses and offenders. While appellate courts have sparingly exercised their authority to reduce or modify defendants' felony sentences, today's decision eliminates that possibility.

{¶ 89} Today's decision vests sentencing courts with complete and unrestrained discretion. It vitiates the General Assembly's intent to provide courts with precise guidance for criminal sentencing within clearly defined constraints and for meaningful appellate review of trial courts' sentencing decisions, *see, e.g., Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, at ¶ 10 (when enacting Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2"), the legislature accorded meaningful review of sentencing decisions to the appellate courts, which included modifying or vacating sentences that were not clearly and convincingly supported by lower-court records).[5] I am keenly aware of the natural state of antagonism that sometimes exists between trial courts and appellate courts. Rarely, if ever, will someone encounter a trial-court judge who enjoys the prospect of having his or her decision scrutinized and possibly reversed. However, every conscientious trial-court judge appreciates the fact that appellate courts have more time to contemplate the record and correct any legal or factual errors that are determined to exist on appeal.

{¶ 90} I do not believe that Ohio law precludes appellate courts from reviewing felony prison sentences for compliance with R.C. 2929.11 and 2929.12. In fact, I believe the opposite. Appellate review adds an important dimension to fundamental justice and is an important check on trial courts' sentencing decisions. To bolster the public's confidence in the justice system, appellate courts must

---

5. 2011 Am.Sub.H.B. No. 86, another sentencing-reform bill, left S.B. 2's statutes pertaining to felony-sentencing appeals largely intact. *See* David J. Diroll, *H.B. 86 Summary, The 2011 Changes to Criminal and Juvenile Law* (2011), available at https://www.supremecourt.ohio.gov/Boards/Sentencing/resources/legSummaries/HB86Summary. pdf (accessed Nov. 15, 2019) [https://perma.cc/RBH7-A33Y].

exercise the statutory powers granted to them by the General Assembly to determine the proper application of the laws to a trial court's sentencing decisions.

{¶ 91} Regrettably, today's decision is not just a defeat for Gwynne's appeal, but a defeat for the constitutional right to appellate review as provided by the Ohio Constitution. Contrary to the state's position, Gwynne's guilty plea did not surrender her right to appellate review. We have. I dissent.

_____

Carol Hamilton O'Brien, Delaware County Prosecuting Attorney, and Douglas N. Dumolt, Assistant Prosecuting Attorney, for appellant.

David H. Birch, for appellee.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, urging reversal for amicus curiae Cuyahoga County Prosecutor's Office.

Zach Klein, Columbus City Attorney, and Lara N. Baker-Morrish, Solicitor General, Columbus Department of Law, urging reversal for amicus curiae Columbus City Attorney Zach Klein.

Russell S. Bensing, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.

_____