**[Cite as *State v. Smith*, 2020-Ohio-5445.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No. L-19-1075

      Appellee                                      Trial Court No. CR0201803006

v.

 Earl Keith Smith                                 **DECISION AND JUDGMENT**

      Appellant                                      Decided:  November 25, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Clayton M. Gerbitz, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Earl Smith, appeals the judgment of the Lucas County Court of

Common Pleas, sentencing him to a total of 16 years in prison after a jury found him

guilty of aggravated robbery and felonious assault, with attendant firearm specifications.

Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On November 7, 2018, appellant was indicted on one count of aggravated burglary in violation of R.C. 2911.01(A)(1) and (C), a felony of the first degree, and one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree. Firearms specifications under R.C. 2941.145(A), (B), (C), and (F) were also attached to each of the foregoing charges. These charges related to an incident that occurred on September 27, 2018.

{¶ 3} On November 27, 2018, appellant appeared before the trial court for arraignment, at which he entered a plea of not guilty. Thereafter, the parties conducted pretrial motion practice and discovery. Following several continuances, the matter proceeded to a three-day jury trial on March 18, 2019.

{¶ 4} During jury selection, the state raised the following question to several of the prospective jurors: "Do you think that you could find somebody guilty beyond a reasonable doubt if the State only produced one witness to testify?" Certain prospective jurors expressed doubt as to whether they would be able to render a guilty verdict under the hypothetical scenario raised by the state. This prompted the trial court to interject and explain to the prospective jurors that "the testimony of one witness alone, if you are convinced beyond a reasonable doubt that that witness is being honest and telling the truth and if that testimony establishes all the elements of the crime * * * and if you believe that witness, then the law is you need to return a verdict of guilty." The court then inquired of those prospective jurors who expressed doubt as to whether they could

2.

follow its instruction. Four of the prospective jurors indicated they could not render a guilty verdict without more than one witness, and the trial court proceeded to sua sponte strike them on that basis.

{¶ 5} Following jury selection, the matter proceeded through preliminary jury instructions, the parties' opening statements, and ultimately to the state's case-in-chief. For its part, the state called five witnesses.

{¶ 6} The state's first witness was Lieutenant Phil Cook of the Toledo Police Department. Cook authenticated a September 27, 2018 emergency 911 call reporting a shooting at 1828 Dunham Street in Toledo, as well as an accompanying incident report.

{¶ 7} As its second witness, the state called detective Scott Smith with the Toledo Police Department. Smith responded to 1828 Dunham Street on September 27, 2018, after he was advised that a person had been shot at that location. Upon arrival, Smith searched the area for shell casings. When he failed to locate any shell casings, Smith inferred that either a semi-automatic firearm was not used in the shooting or the shooter retrieved the shell casings before retreating from the scene.

{¶ 8} While searching the area of the shooting, Smith noticed a baseball cap and blood-stained sweatshirt that was subsequently determined to belong to the victim, Willie Mitchell. Smith testified that the fire department first encountered Mitchell on the porch of the adjacent residence. Based upon the location of Mitchell's baseball cap and sweatshirt, Smith was able to ascertain the location of the shooting. He proceeded to

3.

photograph the scene, and said photographs were entered into evidence and published to the jury at trial.

{¶ 9} Next, the state called Mitchell as its third witness. Mitchell testified that he was familiar with appellant, having seen him "two or three times." On September 27, 2018, Mitchell was taking out the trash at his residence at 1828 Dunham Street when he was approached by three men. Mitchell testified that he saw appellant "back up like he was talking to his friend and I just [saw] him coming towards my driveway and started shooting." Mitchell went on to state that he collapsed after being shot from a distance of less than five feet. Thereafter, appellant and another man approached Mitchell with their firearms drawn. Mitchell identified appellant as the one who held him at gunpoint while the other man stole $1,000 in cash and jewelry from his pockets. After the robbery was complete, the men fled the scene. Eventually, Mitchell was transported to the hospital due to blood loss. While at the hospital, Mitchell informed law enforcement that appellant was the individual who shot him.

{¶ 10} For its fourth witness, the state called Mitchell's neighbor, Betty Evener. At the time of the shooting on September 27, 2018, Evener was in her kitchen. She heard two gunshots, and then proceeded to her back yard, where she found Mitchell lying on the ground near the back of her home. Meanwhile, Evener noticed "two black men running" up her driveway, both wearing gray hooded sweatshirts. Mitchell asked Evener to call 911, and she complied. The 911 call was admitted into evidence and played for the jury at trial.

4.

{¶ 11} Next, the state called detective Jeff Quigley of the Toledo Police Department as its fifth and final witness. Quigley was the detective assigned to investigate the shooting in this case. Initially, Quigley interviewed Mitchell at the hospital. While at the hospital, Mitchell informed Quigley that he had been shot and robbed after being approached by three males. Quigley asked Mitchell who shot him, and Mitchell identified appellant by name. Thereafter, on October 29, 2018, Quigley interviewed appellant at the Toledo Police Department's Safety Building. The interview, which was recorded, was admitted into evidence and played for the jury at trial.

{¶ 12} During the interview, appellant admitted that he was with two other individuals, identified by Mitchell as Jaron Motley and Theran Fisher, at the scene of the shooting. Further, appellant acknowledged that he was aware that the other individuals were carrying firearms. Moreover, appellant conceded the fact that he removed cash and jewelry from Mitchell's pockets after Mitchell was shot.

{¶ 13} At the close of the state's case-in-chief, appellant moved for an acquittal under Crim.R. 29, which was denied by the trial court. Appellant elected to rest without presenting any witnesses or taking the stand in his own defense. The trial court instructed the jury and the parties provided their closing arguments. Following its deliberations, the jury returned with a guilty verdict as to the charges of aggravated robbery and felonious assault, along with the attendant firearms specifications.

{¶ 14} At a sentencing hearing held on March 21, 2019, the trial court heard statements from appellant's counsel, the state, and appellant's grandfather. Appellant

5.

chose not to speak at the sentencing hearing. Thereafter, the trial court addressed appellant and informed him that it considered the principles and purposes of sentencing under R.C. 2929.11, as well as the seriousness and recidivism factors under R.C. 2929.12. The court explained to appellant that it "thought hard about what sentence is appropriate" and noted that appellant's conduct of shooting a victim in the back constituted "the most serious type of conduct relative to the charge of felonious assault." The court found that no mitigating factors were present with respect to the charge of aggravated robbery and again concluded that appellant's conduct constituted the most serious behavior supporting a charge of aggravated robbery. Consequently, the trial court ordered appellant to serve prison sentences of seven years as to the felonious assault charge and six years as to the aggravated robbery charge.

{¶ 15} The court ordered the sentences served consecutively after finding, both at the sentencing hearing and in its sentencing entry, that consecutive sentences were necessary to protect the public from future crime and punish appellant for his conduct, were not disproportionate to the seriousness of appellant's conduct and the danger he presented to the community, and that at least two of the offenses were committed as part of one or more courses of conduct and that the harm caused was so great and unusual that no single prison term for any of the offenses would adequately reflect the seriousness of appellant's conduct. Additionally, the trial court merged the two firearm specifications

6.

and directed that the mandatory three-year prison sentence would be served consecutive to the 13 years imposed on the offenses, for a total prison sentence of 16 years.[1]

{¶ 16} Appellant's timely appeal followed.

## B.  Assignment of Error

{¶ 17} On appeal, appellant assigns the following errors for our review:

I.  Appellant's conviction for felonious assault was against the manifest weight of the evidence.

II.  The court abused its discretion when it removed jurors for cause.

III.  Appellant's sentence is not supported by the record.

## II.  Analysis

## A.  Manifest Weight of the Evidence

{¶ 18} In his first assignment of error, appellant argues that his conviction for felonious assault was against the manifest weight of the evidence.

{¶ 19} When reviewing a manifest weight claim, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.  *Id.*  Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *Id.*

---

[1] The trial court also ordered appellant to serve his 16-year sentence consecutively to sentences imposed in two other cases that are unrelated to the present appeal.

7.

We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 20} Relevant here, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which prohibits a person from knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance.

{¶ 21} That the shooting of Mitchell with a firearm occurred in this case, and that it constitutes felonious assault under R.C. 2903.11(A)(2), is not in dispute. Further, appellant acknowledged during his interview with Quigley that he was present at the scene of the shooting. Nonetheless, appellant argues that his felonious assault conviction was against the manifest weight of the evidence because Mitchell was unable to identify appellant as the shooter when presented with photo arrays, and Mitchell's subsequent identification of appellant lacks credibility since he was shot in the back and thus would have been unable to see his shooter.

{¶ 22} The reason why Mitchell was unable to identify appellant via photo arrays was explained at trial during Mitchell's testimony. Mitchell testified that he was unable to initially identify appellant as the shooter because he was "all drugged up." Nonetheless, Mitchell was adamant that appellant was the shooter. At trial, he testified that, on a scale of one to ten, he would rate his certainty that appellant was the shooter as a ten. Further, when Quigley asked Mitchell who shot him, Mitchell referred to appellant by name.

8.

{¶ 23} As to appellant's argument that Mitchell could not have seen who shot him because he was shot in the back, Mitchell testified that he was approached by three men while taking out his trash, and indicated that he saw appellant from a distance of less than five feet. Mitchell was only shot in the back because he turned and began to run from the men as soon as he saw a firearm. Thus, Mitchell's identification of appellant as the shooter was not inconsistent with the fact that he was shot in the back.

{¶ 24} Given the foregoing testimony presented by the state on the issue of identity in this case, including Mitchell's unequivocal identification of appellant as the shooter, we do not find that this is the exceptional case in which the evidence weighs heavily against appellant's conviction for felonious assault. Accordingly, appellant's first assignment of error is not well-taken.

## B. Removal of Jurors for Cause

{¶ 25} In his second assignment of error, appellant argues that the trial court erred in dismissing prospective jurors for cause sua sponte.

{¶ 26} During voir dire, the trial court, in response to questions posed to prospective jurors by the state, explained that "the testimony of one witness alone, if you are convinced beyond a reasonable doubt that that witness is being honest and telling the truth and if that testimony establishes all the elements of the crime * * * and if you believe that witness, then the law is you need to return a verdict of guilty." Appellant does not dispute that this is an accurate statement of the law. The court then inquired of those prospective jurors who expressed doubt as to whether they could follow its

9.

instruction. Four of the prospective jurors indicated they could not render a guilty verdict without more than one witness, and the trial court proceeded to sua sponte strike them on that basis.

{¶ 27} Because appellant failed to object to the questions asked by the trial court during voir dire or the trial court's sua sponte dismissal of such jurors, he has waived all but plain error. *Hunt v. City of E. Cleveland*, 2019-Ohio-1115, ¶ 38, 128 N.E.3d 265 (8th Dist.2019). A finding of plain error requires three determinations: (1) an actual error, i.e., a deviation from the legal rule, (2) the error was plain within the meaning of Crim.R. 52(B), i.e., an obvious defect in the trial proceedings, and (3) the error must have affected substantial rights, i.e., affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. The burden is on the party asserting plain error. *Id*. at ¶ 17.

{¶ 28} At the outset, we note that a trial court is permitted to strike a juror for cause sua sponte. In *State v*. Lewis, 7th Dist. Mahoning No. 03 MA 36, 2005-Ohio-2699, the Seventh District noted that a trial court is permitted to remove a juror for cause sua sponte. There, the court stated:

> Initially, we note that it does not appear on the record that the state actually challenged the juror for cause. It seems the court may have sua sponte found that the juror should be removed for cause, *which is permissible*. (Emphasis added). See *State v. Smith* (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668.

*Id.* at ¶ 59. Likewise, the Twelfth District has held that "a trial court may, in the exercise of its discretion, *sua sponte* dismiss a juror when it determines that a juror possesses either enmity or bias toward a party or determines that for some other reason a juror is not impartial or is otherwise unsuitable for service." *State v. Midwest Pride IV, Inc.*, 131 Ohio App.3d 1, 20, 721 N.E.2d 458 (12th Dist.1998).

{¶ 29} Here, appellant contends that the trial court should not have dismissed the jurors after questioning them on the issue of whether they could render a guilty verdict on the basis of only one witness's testimony, and further argues that the trial court "conflated legal requirements in its questions or left out important parts like 'beyond a reasonable doubt.'"

{¶ 30} Having reviewed the record, we find that the trial court did not err in questioning the prospective jurors during voir dire. As already noted, the trial court was permitted to question the jurors and then dismiss them for cause sua sponte. The trial court's determination that the jurors could not follow the law was supported by the record, which reveals that the jurors indicated that they would require the state to establish its case with more than one witness.

{¶ 31} Moreover, the trial court clearly articulated the "beyond a reasonable doubt" standard prior to posing questions to those prospective jurors whom it ultimately determined should be dismissed for cause. The fact that the trial court did not repeat this

11.

standard in every successive question does not equate to the trial court conflating the relevant legal standard.

{¶ 32} Additionally, we find that appellant has failed to establish that the trial court's dismissal of four of the prospective jurors affected the outcome of the trial in this case. Relevant to this issue, the First District has noted:

> Furthermore, the Ohio Supreme Court has held that "an erroneous excusal cannot cause the seating of a biased juror and therefore, does not taint the jury's impartiality." Thus, even if we were to assume arguendo that the trial court had erred in dismissing the juror, Peters could demonstrate no prejudice from her dismissal. Accordingly, we overrule the fourteenth assignment of error and affirm the judgment of the trial court.

*Peters v. Lohr*, 1st Dist. Hamilton No. C-060230, 2007-Ohio-7062, ¶ 56.

{¶ 33} Similarly, appellant cannot demonstrate prejudice in this case because the trial court's dismissal of certain prospective jurors did not preclude him from receiving a trial by an impartial jury, as is his right. The trial court seated four equally capable jurors in place of those who were stricken by the court, and appellant advances no argument to establish how this action operated to his prejudice.

{¶ 34} In light of the foregoing, we find that the trial court did not commit plain error, much less reversible error, in sua sponte striking the prospective jurors for cause. Accordingly, appellant's second assignment of error is not well-taken.

12.

## C. Sentencing Issues

{¶ 35} In appellant's third assignment of error, he argues that his 16-year sentence is not supported by the record.

{¶ 36} Our review of felony sentences is governed by R.C. 2953.08(G)(2). Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a sentence only if the record demonstrates, clearly and convincingly, either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; or

(b) That the sentence is otherwise contrary to law.

{¶ 37} Relevant to appellant's argument in this case, we have previously stated that a sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 15-16.

{¶ 38} Under R.C. 2929.11(A), the purposes of felony sentencing are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the

13.

court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." To achieve these purposes, the sentencing court must consider "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). The sentence imposed shall be reasonably calculated to achieve the overriding purposes, "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 39} Here, appellant argues that the trial court failed to follow the mandates of R.C. 2929.11 because it only acknowledged two of the three overriding purposes of felony sentences at the sentencing hearing. Specifically, appellant contends that the trial court failed to consider the goal of rehabilitating him prior to fashioning its sentence. However, as noted by the state, the trial court did indeed reference the goal of rehabilitating appellant at the sentencing hearing. Specifically, the trial court stated the following at the sentencing hearing:

> Under [R.C.] 2929.11 I'm obligated by law to note that the overriding purposes of sentencing, felony sentencing, is to protect the public from future crime by the offender and to punish the offender using minimum sanctions that the Court, I, deem appropriate to accomplish those purposes. I am to consider the need for incapacitating the offender, deterring the

14.

offender and other from future crime, *rehabilitating the offender* and making restitution to the victim. And I have to impose sentences that are consistent with similar sentences I've imposed with other Defendants for the same type of conduct. (Emphasis added.)

{¶ 40} As indicated in the emphasized language above, the trial court clearly considered the need to rehabilitate appellant as it fashioned its sentence in this case. Moreover, the trial court expressly indicated its consideration of the principles and purposes of sentencing under R.C. 2929.11 in its sentencing entry. Therefore, we find no merit to appellant's R.C. 2929.11 sentencing argument.

{¶ 41} Furthermore, we find that the trial court did not err in imposing consecutive sentences. Relevant to this issue, the Supreme Court of Ohio, in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, made it clear that appellate review of the propriety of an aggregate sentence comprised of individual sentences ordered to be served consecutively is limited to a determination of whether the trial court's findings under R.C. 2929.14(C)(4) were supported by the record.

{¶ 42} While imposing the consecutive sentences in this matter, and subsequently in its sentencing entries, the trial court found that consecutive sentences were necessary to protect the public from future crime and to punish appellant, were not disproportionate to the seriousness of appellant's conduct or the danger appellant poses to the public, and that at least two of the offenses were committed as part of one or more courses of conduct and that the harm caused was so great and unusual that no single prison term for any of

15.

the offenses would adequately reflect the seriousness of appellant's conduct. The validity of these findings is not in dispute, and our review of the record supports the findings.

{¶ 43} The trial court imposed a sentence as to each of appellant's offenses that falls within the statutory range applicable to those offenses, and indicated its consideration of R.C. 2929.11 and 2929.12 in imposing appellant's sentence. Further, the trial court made the findings necessary to impose consecutive sentences under R.C. 2929.14(C)(4), and those findings were supported by the record. Therefore, we find no error in the trial court's sentence.

{¶ 44} Accordingly, appellant's third assignment of error is not well-taken.

### III. Conclusion

{¶ 45} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.