[Cite as *State v. Nolan*, 2024-Ohio-1245.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 23CA1169 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| Robert Nolan, | : | **RELEASED 3/27/2024** |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Aaron E. Haslam, Adams County Prosecutor, West Union, Ohio, for appellee.
_____
Hess, J.

{¶1}   Robert Nolan appeals from a judgment of the Adams County Court of Common Pleas convicting him, following his guilty pleas, of two counts of rape.  Nolan presents two assignments of error asserting that the trial court improperly sentenced him to consecutive prison terms and that his sentence is contrary to law.  For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On October 27, 2021, the Adams County grand jury indicted Nolan on four counts of rape, first-degree felonies, against H.J.  Counts 1 and 2 alleged violations of R.C. 2907.02(A)(1)(b) occurring when H.J. was less than 10 years old.  Counts 3 and 4 alleged violations of R.C. 2907.02(A)(2) occurring when H.J. was 15 and 16 years old respectively.

{¶3}    Nolan initially pled not guilty but later pled guilty to Counts 3 and 4.  During the change of plea hearing, Nolan admitted to the essential elements of the offenses, i.e., that he engaged in sexual conduct with H.J. and purposely compelled her to submit by force or threat of force.   R.C. 2907.02(A)(2). Nolan admitted that during the relevant timeframes—August 21, 2019, to October 31, 2019, for Count 3 and March 1, 2021, to April 4, 2021, for Count 4—he performed cunnilingus on H.J. and digitally penetrated her vagina.  He admitted that during those times, he was acting as a parent or in loco parentis of H.J., who lived with him and his wife.  Nolan indicated he understood that because he was acting in such a manner, any force or threat of force could be subtle or slight, and the state did not have to prove he expressly threatened H.J.  *See generally State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 75 (4th Dist.) (explaining that "[t]o prove the element of force in a rape case involving a minor child when the offender stands in loco parentis, the force need not be physical or brutal" and that "the parent's position of authority and power, in relation to the minor's vulnerability, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary"). Nolan admitted that he used some amount of force to move H.J.'s underwear. The trial court accepted the guilty pleas to Counts 3 and 4 and dismissed Counts 1 and 2 pursuant to the plea agreement.

{¶4}    During the sentencing hearing, defense counsel stated that there were no "real aberrations" in Nolan's "record," and that this case "would be something that was out of character."  Counsel stated that Nolan "has expressed both sorrow and a great deal of grief for what's happened." Counsel did not "believe that this is something that would likely ever occur again."  Counsel noted that Nolan was "an older gentlemen" who was

not in "the greatest of health" as he had high blood pressure and had had multiple back and neck surgeries.

{¶5} The court heard statements from Nolan, his wife, and his firstborn granddaughter. Nolan's wife said that she and Nolan had been together "for almost 40 years," that "[t]his is totally out of character," and that Nolan "has always been a great father, husband, grandfather." She acknowledged Nolan "admitted to doing something wrong," but told the court he had "never been in trouble other than a dang on [sic] a speeding ticket." She also said that Nolan had "medical conditions," including a thyroid problem which made him "dizzy a lot" and caused him to collapse "a couple times in the cell." Nolan's firstborn granddaughter said that his grandchildren had been around him their "whole lives," that she never felt uncomfortable around him, and that he had "done nothing other than try to make sure that us kids have everything that we need and to make sure that we're as happy as we can be." She did not think he "should have to spend the rest of his life" in prison for "one mistake." Nolan stated, "I would like to apologize to you guys and hope my family, for putting them through all this, Uh, I'm sorry [sic]."

{¶6} The court indicated it had considered the record, oral statements, any victim impact statements, and the pre-sentence investigation report ("PSI"). The court noted that it had considered the principles and purposes of sentencing under R.C. 2929.11(A) and balanced the seriousness and recidivism factors in R.C. 2929.12. The court also recited some of the information in the PSI.

{¶7} Among other things, the PSI indicates that Nolan was 59 years old at the time of sentencing and that he reported "being in poor physical health." Specifically, he reported having high blood pressure, being diabetic, and having had three back surgeries

and two neck surgeries which were spine related. Nolan also reported that he had been unemployed since 2003, when he was hurt on the job and forced to take early retirement, and that he receives Social Security disability income. The PSI indicates that Nolan had some speeding and seatbelt violations between 1999 and 2004. The PSI also indicates that Nolan "scored 6 (Low) on the Ohio Risk Assessment System indicating a low risk of reoffending" and that Nolan showed no genuine remorse for his offenses.

{¶8}    The PSI includes the following details from a May 13, 2021 interview of Nolan by an investigator. Nolan said that he and his wife had had custody of H.J., his wife's niece's daughter, for about nine to ten years, that he believed H.J. was saying "he sexually touched her because she did not want to move out of the area," that he "never sexually touched her vagina," that he "never performed oral sex on her," and that she "never touched his bare penis." Later, Nolan stated that one time he was sitting in a chair when H.J. "stood in front of him wearing panties." She turned around, and he stood up, grabbed her from behind, and put his finger in her vagina. He "rubbed his finger up H.J.'s bare vagina," "his finger went inside her 'lips,' " and "[h]e inserted his finger inside her vagina up to the first knuckle of his index finger." Nolan said this was the only time he sexually touched H.J., that he never licked her vagina, and that she "grabbed his penis on the outside of his pants" but did not touch his "bare penis." Later, Nolan "changed his statement" and claimed that he was lying on the couch when H.J. sat down and "started rubbing his ears." He got up, H.J. laid on the couch, and he moved her underwear aside and licked her vagina for about five minutes before she went to bed. Nolan asked H.J. "if she wanted to stop and she told him 'no.' " Nolan then admitted to engaging in sexual activity with H.J. a second time about one to two months before the interview. He said

that H.J. was sitting in a chair with him, he put his finger in her vagina, and he licked her vagina while rubbing it. This lasted for about ten minutes before H.J. went to bed. Nolan also stated that the first time he sexually touched H.J. was when she was 14 or 15 years old and that one time, she put her hand "inside his underwear and touched his bare penis."

{¶9}   The PSI includes statements from H.J.  The trial court did not consider one statement because it related to the timeframe alleged in the dismissed counts.  H.J.'s other statements were that "[a] lot of times when [Nolan] would put his finger inside me his fingernail would scratch me," which caused her to bleed and have a burning sensation. She stated that she "experienced pain and suffering," needs "help to get through what happened to me," and needs "counseling and a support group."  H.J. stated her prayer was answered because Nolan "got sent to jail," that he "deserves to be in prison," and that she wants him to "not get out."  H.J. stated that she wanted "to be able to see and talk to my family again" and spend time with them. H.J. stated that her aunt "blamed everything" on her. H.J. wished her aunt realized that Nolan "admitted doing this," that "this is not my fault," and that H.J. loved and missed her.

{¶10}  The trial court noted that the timing of Counts 3 and 4 was "reflective of a pattern of abuse * * * of the * * * child" because there was "a separation of almost 18 months between" the counts.  The court noted that H.J. would have to "deal with" Nolan's actions "for the balance of her life."  The court acknowledged that Nolan did not "have a prior history," so in "a sense," the court agreed with his wife and granddaughter that "this is out of character."  However, the court stated, "But when you start seeing * * * the time spans of this, it's not that out [of] character, out of character is a one-time event."

{¶11} The trial court sentenced Nolan to 9 to 13½ years in prison on each count and ordered that he serve the sentence on Count 4 consecutive to the sentence on Count 3 for an aggregate sentence of 18 to 22½ years. The court found that "the consecutive service is necessary to protect the public from future crime and or to punish the offender," "that consecutive sentences are not disproportionate to the seriousness of Mr. Nolan's conduct and to the danger he poses to the public," and that "the multiple offenses, at least two in this case, were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed is so great and or unusual that no single prison term for any of the offenses committed as part of the courses of conduct would adequately reflect the seriousness of the conduct."

{¶12} The trial court memorialized Nolan's sentence in a judgment entry on sentence. The entry noted that the court had considered the record, oral statements, any victim impact statements, and any PSI prepared. The entry also noted that the court had considered the principles and purposes of sentencing under R.C. 2929.11(A) and balanced the seriousness and recidivism factors of R.C. 2929.12. The entry explained that the court may require the offender to serve prison terms consecutively if it finds that "the consecutive service is necessary to protect the public from future crime or to punish the offender," "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of three additional circumstances applies. The court indicated the second circumstance applied, i.e., "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses

committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

## II.  ASSIGNMENTS OF ERROR

**{¶13}**  Nolan presents two assignments of error:

First Assignment of Error:  The trial court erred to the prejudice of Mr. Nolan by improperly sentencing him to consecutive prison terms.

Second Assignment of Error:  The sentence of the trial court is contrary to law.

## III.  STANDARD OF REVIEW

**{¶14}**  R.C. 2953.08 governs appeals based on felony sentencing guidelines.  R.C. 2953.08(G)(2) states:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the

trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

## IV.  FIRST ASSIGNMENT OF ERROR

{¶15}  In the first assignment of error, Nolan contends that the trial court erred to his prejudice by improperly sentencing him to consecutive prison terms. Nolan acknowledges that "the trial court did state the necessary statutory language on the record and in the sentencing entry." However, citing *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169 ("*Gwynne II*"), Nolan asserts that when imposing consecutive sentences, "the trial court must consider the overall number of consecutive sentences, and the aggregate sentence to be imposed when making necessity and proportionality findings for consecutive sentences."  He claims nothing in the record shows the trial court considered the aggregate sentence of 18 to 22½ years when making its necessity and proportionality findings.

{¶16}  Citing *Gwynne II*, Nolan also asserts that we must conduct a de novo review of the record and determine whether it clearly and convincingly does not support the consecutive-sentencing findings. He maintains that the record does not support them. Specifically, Nolan claims consecutive sentences are not necessary to protect the public because he was 59 years old at the time of sentencing, he has "no prior criminal history besides some speeding tickets," "[h]e is in poor physical condition with several medical issues," "[h]e has been married for 38 years," "his wife spoke in support of him at the sentencing hearing," "[h]is Ohio Risk Assessment Score was 6 which meant he is a low risk to reoffend," and he "accepted responsibility" by "acknowledging his wrongdoing when interviewed by law enforcement" and "entering a plea of guilty, saving the victim

from having to testify." Nolan also claims that consecutive sentences are disproportionate to his conduct and the danger he poses to society. He asserts that the imposed sentence will keep him "in prison well into his 70's," that "the sentence will almost certainly be a life sentence" given "his poor physical health," and that a life sentence is not justified given "his lack of prior criminal history, age, and acceptance of responsibility."

{¶17} R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶18} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. But the court "has no obligation to state reasons to support its findings" and has no obligation "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record

and are incorporated into the sentencing entry." *Id.* "[A] word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. "If the trial court fails to make the requisite findings at the sentencing hearing, the imposition of consecutive sentences is contrary to law even if the sentencing entry includes the findings." *State v. Conn*, 4th Dist. Adams No. 23CA1163, 2023-Ohio-2669, ¶ 26, citing *State v. Brickles*, 4th Dist. Pickaway No. 19CA16, 2021-Ohio-178, ¶ 9, 11.

{¶19} Even though Nolan concedes that "the trial court did state the necessary statutory language on the record and in the sentencing entry," he suggests the imposition of consecutive sentences is contrary to law because the trial court did not consider the aggregate sentence when it made the necessity and proportionality findings. At the time of the sentencing hearing, the Supreme Court of Ohio interpreted R.C. 2929.14(C) to require trial courts to consider the aggregate sentence to be imposed when making those findings. *State v. Gwynne*, ___ Ohio St.3d ___, 2022-Ohio-4607, ___ N.E.3d ___, ¶ 31 ("*Gwynne IV*"). However, as we will explain in more detail below, the court recently vacated *Gwynne IV* and left unresolved whether R.C. 2929.14(C)(4) requires consideration of the aggregate sentence because a majority of the court did not reach a consensus on the issue. *State v. Gwynne*, ___ Ohio St.3d ___, 2023-Ohio-3851, ___ N.E.3d ___, ¶ 26 (lead opinion) ("*Gwynne V*"). Even if the court ultimately concludes that it does, "there is no Ohio law, statutory or otherwise, that requires a sentencing court to state *on the record* that it 'considered' the aggregate sentence." (Emphasis added.) *State v. Dunn*, 11th Dist. Geauga No. 2022-G-0041, 2023-Ohio-2828, ¶ 76, *appeal allowed*

2024-Ohio-335. And nothing in the record demonstrates that the trial court did not consider the aggregate sentence in accordance with the caselaw in effect at the time of sentencing. Thus, we do not clearly and convincingly find the trial court's imposition of consecutive sentences is contrary to law.

{¶20} Next, we must consider whether we "clearly and convincingly" find "[t]hat the record does not support the sentencing court's" consecutive sentence-findings. R.C. 2953.08(G)(2)(a). Before we do so, we must further discuss the *State v. Gwynne* line of cases as they impact our analysis of that issue.

### A. *Gwynne I*

{¶21} Susan Gwynne was charged with 101 counts related to the theft of items from nursing homes and assisted living facilities over an eight-year period. *State v. Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570, ¶ 6, 8 ("*Gwynne I*"). She pled guilty to 31 felonies and 15 misdemeanors. *Id.* at ¶ 9. The trial court ordered that she serve her felony sentences consecutively and her misdemeanor sentences concurrently, for an aggregate sentence of 65 years. *Id.* at ¶ 12. She appealed, asserting that the court sentenced her in contravention of the sentencing statutes and that her aggregate sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at ¶ 14-16.

{¶22} In *Gwynne I*, the Fifth District analyzed the aggregate sentence under R.C. 2929.11 and 2929.12 and found it did not comply with the purposes and principles of felony sentencing. *Id.* at ¶ 22-30. The court found that a 65-year sentence "for a series of non-violent theft offenses for a first-time felon" was "disproportionate to the conduct and the impact on any and all of the victims either individually or collectively," was "plainly

excessive," and "shocks the consciousness." *Id.* at ¶ 29-30. The Fifth District vacated some of the consecutive sentences, resulting in a new aggregate sentence of 15 years, and concluded the Eighth Amendment argument was moot. *See id.* at ¶ 32-38.

## B. *Gwynne II*

**{¶23}** In *Gwynne II*, a majority of justices of the Supreme Court of Ohio agreed that R.C. 2953.08(G)(2) does not allow an appellate court to use R.C. 2929.11 and 2929.12 for purposes of reviewing consecutive-sentence findings. *Gwynne II*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, at ¶ 13-18 (plurality opinion); *id.* at ¶ 22 (Kennedy, J., concurring in judgment only). The Supreme Court reversed the judgment of the Fifth District and remanded to it to consider Gwynne's assignment of error on consecutive sentences using the standard of review in R.C. 2953.08(G)(2). *Id.* at ¶ 20.

## C. *Gwynne III*

**{¶24}** On remand, the Fifth District affirmed the trial court's judgment. *State v. Gwynne*, 2021-Ohio-2378, 173 N.E.3d 603, ¶ 34 ("*Gwynne III*"). The Fifth District found the sentence "wholly excessive * * * for a non-violent first time felony offender." *Id.* at ¶ 25. However, the court explained that "no authority exists for this court to vacate some, but not all of Gwynne's consecutive sentences." *Id.* The court also explained that R.C. 2953.08(G)(2) sets forth "a very deferential standard of review, prohibiting appellate courts from substituting their judgment for that of trial judges." *Id.* The Fifth District found that the trial court made the appropriate findings and that the record supported the imposition of consecutive sentences, so the Fifth District had "no choice" but to reject Gwynne's consecutive-sentence challenge. *Id.* at ¶ 26. The Fifth District also rejected Gwynne's Eighth Amendment argument. *Id.* at ¶ 27-31.

### D. *Gwynne IV*

**{¶25}** In *Gwynne IV*, a 4-3 decision, the Supreme Court of Ohio reversed the Fifth District's judgment and remanded for further proceedings. *Gwynne IV,* ___ Ohio St.3d ___, 2022-Ohio-4607, ___ N.E.3d ___, at ¶ 2. The Supreme Court held that "appellate review of consecutive sentences under R.C. 2953.08(G)(2) does not require appellate courts to defer to the sentencing court's findings in any manner." *Id.* at ¶ 1. "Instead, the plain language of the statute requires appellate courts to review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings." *Id.* The Supreme Court acknowledged "R.C. 2953.08(G)(2) gives some amount of deference to a trial court's decision concerning consecutive sentences." *Id.* at ¶ 18. However, the Supreme Court explained that "this deference—unlike types of deference that are more traditionally associated with appellate review—does not stem from any obligation on the part of the appellate court to defer to the trial court's findings." *Id.* The deference "comes from the legislature's determination that an appellate court must use a higher evidentiary standard—as opposed to the one the trial court uses when making the findings—when it reviews the record and determines whether to exercise its authority under R.C. 2953.08(G)(2) to reverse or modify the trial court's order of consecutive sentences." *Id.* at ¶ 18.

**{¶26}** The Supreme Court also held that "R.C. 2929.14(C)(4) is ambiguous insofar as it does not, on its face, reveal what is meant by the terms 'consecutive service' and 'consecutive sentences,' when these terms are used within the findings." *Id.* at ¶ 13. The terms "could mean the abstract conceptualization of the terms, as in the service of more than one individual sentence," but they "could also mean the consecutive sentence that

the trial court actually imposes—that is, the individual prison term on each count that the trial court decides to impose consecutively and the aggregate prison term that results." *Id.* The court held that "based on the language of R.C. 2929.14(C)(4), the consecutive-sentence findings are not simply threshold findings that, once made, permit any amount of consecutively stacked individual sentences." *Id.* at ¶ 1. "R.C. 2929.14(C)(4) requires trial courts to consider the overall number of consecutive sentences and the aggregate sentence to be imposed when making the necessity and proportionality findings required for the imposition of consecutive sentences." *Id.* at ¶ 31. Therefore, "authority exists for an appellate court to vacate some—but not all—of the consecutive sentences that a trial court has imposed." *Id.* at ¶ 17. "All that is required pursuant to R.C. 2953.08(G)(2) is that the appellate court clearly and convincingly find that the record does not support the trial court's necessity or proportionality findings in light of the actual number of consecutive terms that it imposed and the resulting aggregate sentence." *Id.*

{¶27} The Supreme Court offered "some practical guidance on consecutive-sentence review." *Id.* at ¶ 24. The Supreme Court explained that the first step "is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made." *Id.* at ¶ 25. If the appellate court determines the findings have been made, it "may then determine whether the record clearly and convincingly supports those findings." *Id.* at ¶ 26. "An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds—in other words, has a firm conviction or belief—that the evidence in the record does not support the consecutive-sentence findings that the trial court made." *Id.* at ¶ 27.

{¶28} The Supreme Court explained that "[w]hen reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made." *Id.* at ¶ 28. "The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings." *Id.* at ¶ 29. "This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* "[T]he appellate court is * * * authorized to substitute its judgment for the trial court's judgment if the appellate court has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results." *Id.*

### E. *Gwynne V*

{¶29} The state filed a motion for reconsideration, and in a 3-1-3 decision, the Supreme Court of Ohio granted the motion, vacated its decision in *Gwynne IV*, and affirmed the judgment of the Fifth District in *Gwynne III*. *Gwynne V*, ___ Ohio St.3d ___, 2023-Ohio-3851, ___ N.E.3d ___, at ¶ 1, 26; *id.* at ¶ 27 (Fischer, J., concurring in judgment only). In the lead opinion, three justices found that "the standard of review established by the majority in *Gwynne IV* is contrary to the plain language of R.C. 2953.08(G)(2)." *Id.* at ¶ 4. The lead opinion found that "R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *Id.* at ¶ 5. "The statutory language does not require that the

appellate court have a firm belief or conviction that the record supports the findings." *Id.* at ¶ 15. Rather, the appellate court "must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce or otherwise modify consecutive sentences." *Id.* Thus, an appellate court must "employ a deferential standard" and "not simply substitute its judgment for that of a trial court." *Id.*

{¶30} The lead opinion also found that "Gwynne did not raise a proposition of law asserting that R.C. 2929.14(C)(4) requires both trial and appellate courts to consider a defendant's aggregate prison term when imposing or reviewing consecutive sentences" and that Gwynne did not address this issue "in her briefs or at oral argument." *Id.* at ¶ 4. However, even if determining the meaning of the terms "consecutive service" and "consecutive sentences" in the statute was a threshold question the Supreme Court had to decide before addressing the arguments briefed by the parties, it would not affect the outcome because the terms are not ambiguous. *Id.* at ¶ 21. The lead opinion explained that the terms have "only one relevant meaning: the running of two or more sentences one right after the other." *Id.*, citing *Black's Law Dictionary* 1569 (10th Ed.2014). Neither term "is synonymous with the term 'aggregate sentence,' which means '[t]he total sentence imposed for multiple convictions * * *[.]' " *Id.*, quoting *Black's Law Dictionary* 1569 (10th Ed.2014). Therefore, the first dissenting opinion's suggestion that the trial court's consecutive-sentence findings must be made and reviewed in consideration of the aggregate sentence to be imposed "simply reads words into the statute." *Id.* And the lead opinion found that the Fifth District properly applied R.C. 2953.08(G)(2) "and could not clearly and convincingly find that the record did not support the trial court's consecutive-sentence findings." *Id.* at ¶ 26.

**{¶31}** The opinion concurring in judgment only concluded "Gwynne's consecutive sentences must be affirmed because the appellate court could not find that the record does not support the trial court's consecutive-sentence findings when the appellate court did not have access to the record relied on by the trial court to make its sentencing findings." *Id.* at ¶ 27 (Fischer, J., concurring in judgment only). The trial court reviewed a presentence-investigation report which "never made it into the appellate record and therefore was never reviewed by the court of appeals." *Id.* at ¶ 38. Therefore, it was "impossible for the appellate court to find under any standard of review that the record does not support the trial court's consecutive-sentence findings in this case." *Id.* at ¶ 37. The author of the opinion concurring in judgment only "reserve[d] judgment" on "the issues discussed by the lead opinion and two dissenting opinions." *Id.* at ¶ 44. Three justices dissented from the decision to grant reconsideration. *Id.* at ¶ 48 (Stewart J., dissenting, joined by Trapp and Brunner, JJ.); *id.* at ¶ 81 (Brunner, J., dissenting, joined by Trapp, J.)

## F.  Analysis

**{¶32}** Nolan relies solely on *Gwynne II* for the propositions that (1) we must conduct a de novo review of the record and determine whether it clearly and convincingly does not support the consecutive-sentence findings, and (2) the overall number of consecutive sentences and the aggregate sentence to be imposed must be considered with respect to the necessity and proportionality findings. *Gwynne II* does not stand for either proposition. As discussed above, *Gwynne IV* stands for both propositions; however, after Nolan filed his appellate brief but before the state filed its brief and Nolan's reply brief was due, *Gwynne IV* was vacated in *Gwynne V*.

{¶33} Because four justices declined to join the lead opinion in *Gwynne V*, the statements in the lead opinion regarding the standard of review and consideration of the aggregate sentence cannot be characterized as a holding of the Supreme Court of Ohio and are not binding authority. *See* Article IV, Section 2(A), Ohio Constitution ("A majority of the supreme court shall be necessary * * * to render a judgment"); *Fed. Home Loan Mtge. Corp. v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 29 (portion of opinion four justices declined to join "is not a holding of this court"); *State ex rel. Pennington v. Bivens*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, ¶ 30 (case in which four justices declined to join per curiam opinion "is not binding on this court"). Thus, *Gwynne V* leaves the law on consecutive sentences "unclear." *Gwynne V*, ___ Ohio St.3d ___, 2023-Ohio-3851, ___ N.E.3d ___, ¶ 47 (Stewart, J., dissenting).

{¶34} For purposes of this appeal, the lack of clarity is immaterial because regardless of whether we conduct our review in accordance with the lead opinion in *Gwynne V* or with the vacated majority opinion in *Gwynne IV*, which three justices would have left intact in *Gwynne V*, the result in this case would be the same—we would affirm the consecutive-sentence findings. The first finding R.C. 2929.14(C)(4) requires is that "the consecutive service is necessary to protect the public from future crime *or* to punish the offender." (Emphasis added.) Nolan challenges the trial court's finding that the consecutive service is necessary to protect the public from future crime. But he does not challenge the trial court's alternative finding that the consecutive service is necessary to punish him. Therefore, even if we clearly and convincingly found that the record does not support the finding that the consecutive service is necessary to protect the public from future crime, we would still have to uphold the finding that the consecutive service is

necessary to punish Nolan. *See generally Schutte v. Summit Cty. Sheriff's Office*, 9th Dist. Summit No. 28856, 2018-Ohio-2565, ¶ 21 ("When a trial court grants judgment on multiple, alternative bases and an appellant does not challenge one of those bases on appeal, this Court will uphold the judgment on the unchallenged basis.").

{¶35} The second finding R.C. 2929.14(C)(4) requires is that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." It is true that Nolan was 59 years old at the time of sentencing, that he will be in prison well into his 70's under the trial court's sentence, that he had no significant criminal history, that there is some evidence he has medical issues, that his wife spoke in support of him at the sentencing hearing, that he had a low Ohio Risk Assessment System score, that he eventually admitted to engaging in sexual conduct with H.J. in the interview with the investigator, and that he accepted responsibility by entering guilty pleas. However, as the trial court indicated, this case did not involve a one-time event. Nolan pled guilty to two counts of rape of H.J., a minor entrusted to his care, occurring roughly 16 to 19 months apart. H.J. suffered some physical harm and suffered psychological harm for which she needs counseling and a support group. The crimes also negatively impacted H.J.'s relationship with her family.

{¶36} As the trial court noted, the author of the PSI felt Nolan showed no genuine remorse for his offenses. Although Nolan entered guilty pleas, he did so only after suggesting to the investigator that H.J. instigated conduct with him and after undergoing a competency evaluation in which the evaluator opined that Nolan's "presentation during the interview suggested he was attempting to portray himself as less capable than he truly is" and that he appeared to be "malingering impaired memory in an attempt to avoid

* * * the * * * matters currently pending." And while Nolan, his wife, and his attorney indicated he suffers from various medical issues, the suggestion that those issues prevent him from committing similar offenses in the future is not well-taken. The record does not contain any of Nolan's medical records, and it is not clear whether Nolan's current medical issues began before or after he raped H.J. To the extent any of the issues, like his neck and back problems, stemmed from his work injury, that event occurred in 2003, over a decade before Nolan raped H.J. Even if Nolan's current medical issues began after he raped H.J., he disregards the fact that he used very little physical force to rape H.J. because he used his relationship with her to facilitate the offenses.

{¶37} After reviewing the record and applying the deferential standard of review set forth in the lead opinion in *Gwynne V*, we do not have a firm belief or conviction that the record does not support the trial court's finding that consecutive sentences are not disproportionate to the seriousness of Nolan's conduct and to the danger he poses to the public. Likewise, after applying the de novo standard of review set forth in *Gwynne IV*, we do not have a firm belief or conviction that the evidence does not support the trial court's proportionality finding, including the number of consecutive terms and aggregate sentence of 18 to 22½ years in prison. Therefore, regardless which position the Supreme Court of Ohio ultimately adopts, we cannot clearly and convincingly find that the record does not support the trial court's proportionality finding.

{¶38} Finally, R.C. 2929.14(C)(4) requires that the trial court make at least one of three alternative findings in R.C. 2929.14(C)(4)(a)-(c). The trial court found R.C. 2929.14(C)(4)(b) applied. Nolan does not challenge that finding on appeal.

**{¶39}** For the foregoing reasons, we conclude that the trial court did not err to the prejudice of Nolan by improperly sentencing him to consecutive prison terms. Accordingly, we overrule the first assignment of error.

## V.  Second Assignment of Error

**{¶40}** In his second assignment of error, Nolan contends that his sentence is contrary to law.  Nolan claims the trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11 and seriousness and recidivism factors in R.C. 2929.12. Nolan concedes that the trial court "referenced the sentencing factors prior to imposing sentence and placed them in the sentencing entry."  However, he claims "the record establishes the trial court did not consider the purposes and principles of sentencing prior to imposing the sentence, but instead only recited the statutory language."  Nolan asserts that he is 59 years old, has no prior criminal history, is married, and accepted responsibility by entering a guilty plea, which prevented the victim from having to testify and relive the crimes. Nolan maintains that "[t]here is no question that any sexual offense against a child is serious and among the worst type of cases."  But he claims that "the specific facts" that he "pled guilty to are not more serious than other similar offenses" and that his conduct "does not warrant a sentence that is close to the maximum sentence [he] could have received."  Nolan asserts that he "could have committed a murder offense and would have been eligible for parole after having served 15 years in prison."

**{¶41}** R.C. 2929.11 states:

(A)  A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing.  The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of

the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.   To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

* * *

**{¶42}**  R.C. 2929.12(A) states:

Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code.   In exercising that discretion, the court shall consider the factors set forth in [divisions (B) through (F)] of this section * * * and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

R.C. 2929.12(B) through (F) then set out factors for the court to consider relating to the seriousness of the offender's conduct, the likelihood of the offender's recidivism, and the offender's service in the armed forces of the United States, if any.

**{¶43}**  "Because both R.C. 2929.11 and R.C. 2929.12 require the trial court to consider the factors outlined in those two statutory provisions, * * * a trial court's failure to consider the factors would render the sentence * * * 'contrary to law.' "  *State v. Poole*, 4th Dist. Adams No. 21CA1151, 2022-Ohio-2391, ¶ 17.  However, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record."  *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20.

**{¶44}** Nolan concedes that the trial court "referenced the sentencing factors prior to imposing sentence and placed them in the sentencing entry." But he then appears to ask us to infer that the trial court did not in fact consider them because his sentence is not supported by the record under R.C. 2929.11 and 2929.12. However, "R.C. 2953.08(G)(2) does not permit an appellate court to conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11." *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 21, citing *Jones* at ¶ 41-42. "R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 22, citing *Jones* at ¶ 31, 39. If we were to infer a sentence was contrary to law and vacate it merely because we did not believe the sentencing factors supported it, we would in effect be vacating a sentence based on our view that it is not supported by the record under R.C. 2929.11 and 2929.12. Therefore, we do not clearly and convincingly find that Nolan's sentence is contrary to law, and we overrule the second assignment of error.

## VI.  CONCLUSION

**{¶45}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**