[Cite as *State v. Fidler*, 2026-Ohio-30.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2024CA0010 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Morrow County Court of Common Pleas, Case No. 2022-CR-0024 |
| LAWRENCE FIDLER, | Judgment:   Affirmed in part; Reversed and Remanded in part |
| Defendant – Appellant | Date of Judgment Entry: January 7, 2026 |

**BEFORE:** Craig R. Baldwin; William B. Hoffman; Kevin W. Popham, Judges

**APPEARANCES:** DAVE YOST, Ohio Attorney General, ANDREA K. BOYD, Special Prosecuting Attorney, for Plaintiff-Appellee; WILLIAM T. CRAMER, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Lawrence Fidler, appeals the trial court's decision to allow the admission of evidence of child pornography found on his computer during his trial on charges of kidnapping, rape, sexual battery, and gross sexual imposition; and, the trial court's imposition of consecutive sentences following the jury's guilty verdict. For the reasons set forth below, we affirm the trial court's decision regarding the admission of said evidence; and, remand the matter to the trial court for resentencing pursuant to R.C. 2929.14(C)(4).

**STATEMENT OF FACTS AND THE CASE**

{¶2}   The appellant sexually assaulted his two young daughters under the guise of "teaching them a lesson" and "providing sexual education." He performed oral sex on his thirteen year-old daughter A.F.; and, climbed on top of her and held her down, allegedly to show her that she was not strong enough to prevent being raped. In addition, he digitally penetrated his nine year-old daughter M.F. while "giving her a sex talk."

{¶3}   The appellant was a stay-at-home father with his three children while his wife worked outside of the home, and was the primary caretaker of the couple's three school-aged children, A.F., M.F., and W.F. while his wife was at work. When A.F. was twelve or thirteen years old, the appellant began punishing her by taking photographs of her while she was in the bathroom. The appellant threatened A.F. with the photographs, telling her that he would show other people the photos of her if she misbehaved. The appellant told A.F. that he would upload the photos to an anonymous profile on Facebook and share them with A.F. 's classmates, teachers, or members of their church.

{¶4}   When A.F. was thirteen years old the appellant told her that he found inappropriate messages between her and her boyfriend on her cell phone. The appellant and A.F. were the only ones home. The appellant took A.F. upstairs, told her to stand in his bedroom next to his bed, and recorded her with his phone while he gave her instructions to take off various pieces of clothing until she was naked. The appellant told A.F. to lay down on the bed and spread her legs, and told her he wanted to record her vagina while getting closer with the camera. The appellant then put his mouth on A.F. 's vagina and performed oral sex on her. The appellant, who weighed over 300 pounds, climbed on top of A.F. and held down her arms, reached one of his arms down and started

to unbuckle his belt. A.F. pleaded with the appellant, telling him "I don't want to do this. You don't want to do this. This isn't okay." The appellant told A.F. that she could just "blow him," and when she said no he continued to try to open his pants; however, the appellant finally stopped. When A.F. tried to tell authorities what had happened, the appellant asked her if she thought about what it would do to their family if she reported his actions, and asked her if she thought that her mother could handle being a single mom. A.F. was nervous about breaking up her family, became afraid that her siblings could be placed in foster homes or separated, and was scared to do that to her mom, so she recanted her statements.

{¶5} Several months later, A.F. talked to a friend about what had happened previously, and told her friend that her father had threatened her again. A.F. and her friend went to the school counselor; A.F. disclosed what had happened the previous spring, and why she was nervous that it was going to happen again. On the way home from school, A.F. told her mother that she had caught the appellant looking at her in the shower, and that she was really uncomfortable. A police officer and a caseworker from children's services came to A.F.'s school to speak with A.F. and her mother. A.F. detailed for her mother what the appellant had done to her. A.F. and her mother signed paperwork to get a temporary restraining order, and the appellant was removed from the family home. Law enforcement seized the appellant's desktop computer and several hard drives, flash drives, and storage media when the appellant was removed from the home. While Appellant was being removed, A.F. and her siblings went to their grandma's house.

{¶6} Once A.F.'s mother was able to pick all three children up, she told A.F.'s younger siblings that the appellant had done something wrong and that he would not be

home for a while. A.F. had not told her younger sister, M.F., anything about their father's sexual assault of A.F. Upon arriving home, M.F. detailed for the girls' mother the sexual abuse that the appellant had inflicted on her.

{¶7} When M.F. was nine or ten years old, the appellant inserted two of his fingers into M.F.'s vagina under the guise of a "sex talk." The appellant explained to M.F. the different parts of her body, and pulled M.F.'s pants down to her ankles. The appellant specifically wanted to show M.F. her "g-spot," so he put two of his fingers inside her vagina. M.F. was too young to understand what was happening; she thought it was a normal occurrence but just knew that she did not like it and that it hurt. When M.F.'s mother got home, M.F. told her that she wanted her mother to give her the second part of the sex talk, because the appellant had told M.F. that part two was coming and she did not want part two. M.F. also disclosed that every time that she and the appellant were in the car on the way home late at night the appellant would pull over and put his hand down M.F.'s pants to see if she had grown pubic hair. On another occasion, the appellant pushed M.F. up against the back door and started putting his hands down her pants.

{¶8} A.F. and M.F. both underwent forensic interviews and medical exams at Nationwide Children's Hospital. A.F. disclosed in her interview that the appellant's mouth was on her vagina, that the appellant would touch her breasts while telling her she needed to "put those away," and that during the hour that she was home from school before her siblings got home that her father would follow her into the bathroom and take pictures of her using the toilet. A.F. also disclosed that the appellant threatened to post nude photos of her online if she did not do her chores.

{¶9}   The appellant was indicted on one count of kidnapping, two counts of rape, two counts of sexual battery, and two counts of gross sexual imposition. He pleaded not guilty, and the matter proceeded to trial.

{¶10} Evidence of the above described events perpetrated upon A.F. and M.F. was presented to the jury. In addition, evidence of child pornography found on the appellant's computer was admitted at trial over the appellant's objection. The appellant had a desk computer that was in its own computer room that was password protected. No one else used the appellant's computer without his permission. The appellant was on his computer every day for most of the day. The appellant's family believed that he was constantly talking to people online and playing games.

{¶11}  Neither A.F. or M.F., nor their mother, ever searched sexual terms on the computer, and their younger brother W.F. was too young to use computers. The girls' mother tried to keep the kids away from the appellant's computer room; she knew that the appellant sometimes viewed sexually related items on his computer, but she did not see much of it because she purposely avoided it. A forensic analyst from the Bureau of Criminal Investigation ("BCI") testified regarding the keyword searches found on the appellant's computer from different websites, which showed that the appellant had searched for child pornography. More specifically, the appellant's computer searches contained search terms such as: "teen video," "two young black teens," "two young teens on webcam," "young junior teen," "young stick cam teens," very young teen forced," "very young teen webcam," "youngest teen forced by brother," "very young teen big boobs," "very young pre-Lolas" (referring to the term Lolita, which has become synonymous with terminology in teen pornography), "really young girl," "young teenager ages 13 to 15,"

"pre-dear" (a Japanese art form for young women preteen in different stages of dress and undress); "young girl boobs," "barely young little girl models," "younger forbidden nude sister, forced incest, super young teen force," "young girl force," "exploited tiny young teen," "young teenagers aged 13 to 15 force," "very young teen force," "youngest teen forced by brother," "young teen raped," among others. All of the searches were conducted on the appellant's desktop computer. The BCI's analysis revealed at least 552 different searches, with the latest search occurring on the date that the appellant was removed from the home.

{¶12} The trial concluded, the parties presented their closing arguments, and the trial court instructed the jury. The jury instructions included the following instruction on "other acts" evidence:

Evidence was received about the commission of other acts other than the offenses with which the defendant is charged in this trial. That evidence was received only for the limited purpose of proving intent. You may, but are not required to, infer from the evidence of other acts by the defendant that is [sic] more probable than not that the defendant intended to commit the offenses charged in this case. The question is whether, under the circumstances, the detailed facts of the charged offenses and other acts strongly suggest that an innocent explanation is not plausible.

The evidence about the commission of acts other than the offenses with which the defendant is charged in this trial cannot be considered for any other purpose than the purpose identified. It was not received, and you may not consider it, to prove the character of the defendant in order to show

that he acted in conformity with that character. It does not follow from the defendant's past acts that he committed the particular crimes charged in this case. The state [sic] has the burden of proving each element of the particular crimes currently at trial beyond a reasonable doubt. The State cannot satisfy its burden merely by implying that the defendant committed these crimes because his other acts suggest a propensity to commit crimes.

{¶13} The jury found the appellant guilty of kidnapping and gross sexual imposition as to A.F.; and, guilty of rape and sexual battery as to M.F. The jury was unable to reach a verdict regarding the rape and sexual battery as to A.F. During sentencing, the trial court noted that the victims were the appellant's young daughters, and that his actions had hurt them deeply. The trial court stated that the appellant's act of kidnapping A.F. for the purposes of engaging in sexual activity emotionally traumatized her, and raping M.F. when she was less than thirteen years old emotionally traumatized her.

{¶14} The trial court imposed a ten year prison sentence on the appellant's conviction for the kidnapping of A.F., to be served consecutively with a sentence of ten years to life in prison on the appellant's conviction for the rape of M.F., who was less than thirteen years old at the time of the offense. The trial court merged the appellant's conviction of sexual battery of M.F. found at count seven with his conviction of the rape of M.F. at count six, and ran the appellant's sentence on the gross sexual imposition of A.F. concurrent to the other offenses, for an aggregate sentence of twenty years to life in prison.

{¶15} During the sentencing hearing, the trial court stated that "[t]he Court finds consecutive sentences should be imposed on the basis that there are different victims

involved in Counts 1 and 6 and the seriousness of the harm caused to these two separate victims. The prison sentence shall be concurrent to the prison sentences imposed in Counts 4 and 7." In addition, the trial court stated "[a]gain, the Court finds consecutive sentences should be imposed on the basis that there are different victims involved in Counts 1 and 6 and the seriousness of the harm caused to these two separate victims. A prison sentence will be concurrent to the prison sentence in Count 4."

{¶16} The trial court also issued a Journal Entry of Sentence in which it found that ". . . consecutive sentences should be imposed on the basis that there are different victims involved in Counts 1 and 6 and the seriousness of the harm caused to these two separate victims. The Court finds that consecutive sentences are necessary to punish the offender and is not disproportionate to the seriousness of conduct and danger posed by the defendant and two or more offenses are part of one or more courses of conduct and the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct…."

{¶17} The appellant filed a timely appeal in which he sets forth the following two assignments of error:

{¶18} "I. APPELLANTS [SIC] RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY THE ADMISSION OF EVIDENCE OF CHILD PORNOGRAPHY IN VIOLATION OF EVID.R. 404(B) AND EVID.R. 403(A)."

{¶19} "II. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING THE FINDINGS REQUIRED BY R.C. 2929.14(C)(4)."

**ASSIGNMENT OF ERROR NO. I**

{¶20}  The appellant argues in his first assignment of error that the trial court erred in admitting evidence of the child pornography found on his computer. We disagree.

### Standard Of Review

{¶21}  The standard of review for a trial court's admission of "other acts" evidence was addressed by the Ohio Supreme Court in *State v. Morris*, 2012-Ohio-2407:

> "The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice." *State v. Diar*, 120 Ohio St.3d 460, 2008 Ohio 6266, 900 N.E.2d 565, ¶ 66. *See also State v. Sage*, 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343 (1987), paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the sound discretion of the trial court"). "Abuse of discretion" has been described as including a ruling that lacks a "sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). A review under the abuse-of-discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments. *Id*.

*Id.* at ¶14.

*Analysis*

**{¶22}** The appellant submits that the trial court's admission of evidence relating to his child pornography internet searches found on his computer constitutes other acts evidence that should have been excluded pursuant to Evid.R. 404(B) and Evid.R. 403(A). We disagree.

**{¶23}** The Ohio Supreme Court discussed Evid.R. 404(B), Evid.R. 403(A), and other acts evidence in *State v. Echols*, 2024-Ohio-5088:

> Evid.R. 404(B)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "This type of evidence is commonly referred to as 'propensity evidence' because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question." *Hartman*, 2020-Ohio-4440, at ¶ 21. Evidence of any other crime, wrong, or act, however, may be admitted for a purpose other than showing a person's propensity to commit [**13] a crime. Evid.R. 404(B)(2). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*
>
> In *Hartman*, we explained that to properly apply Evid.R. 404(B), courts must determine exactly how such "other-acts" evidence connects to a proper nonpropensity purpose without relying on any intermediate improper-character inferences. *Id.* at ¶ 23. We further explained that "[t]he

analysis does not end once a proponent has established a permissible nonpropensity purpose." *Id.* at ¶ 29. Rather, the trial court must also perform the balancing required by Evid.R. 403(A) and determine whether the evidence should be excluded because "its probative value 'is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Id.*, quoting Evid.R. 403(A).

*Id.* at ¶21-22. In the case sub judice, the appellant argued in his defense that his actions towards A.F. and M.F. were for disciplinary and educational purposes only, and were not motivated or otherwise undertaken for the purposes of his personal sexual gratification. He therefore opened the door to the issue of his intent, and the admission of evidence of his intent. This is precisely the type of exception to the "other acts" evidentiary rule described by the rule itself as well as the case law interpreting the same.

**{¶24}** The trial court's admission of evidence regarding the appellant's internet search history for child pornography is also not violative of Evid.R. 403(A). As set forth by the *Echols* Court:

The Evid.R. 403(A) balancing requires the court to engage in the "highly fact-specific and context-driven analysis" of weighing the probative value of the other-acts evidence against the danger of unfair prejudice. *Hartman*, 2020-Ohio-4440, at ¶ 30. In assessing the probative value of other-acts evidence, a court should consider, among other things, whether the evidence goes to an issue that is "actually in dispute," the extent to which the evidence is "material to the case," and the extent to which the

State is able to "prove the same fact[s] through less prejudicial means." *Id.* at ¶ 31-32.

*Id.* at ¶42. The appellant himself opened the door to the admission of evidence regarding his child pornography internet searches when he argued that his intentions were not motivated by sexual gratification. Furthermore, the trial court gave the jury a limiting instruction to not consider evidence of the appellant's internet searches for child pornography as evidence of the appellant's guilt with regard to the charges for which he was on trial.

We therefore find that the appellant's first assignment of error to be without merit, and it is overruled.

## ASSIGNMENT OF ERROR NO. II

{¶25} The appellant argues in his second assignment of error that the trial court erred when it failed to make the requisite R.C. 2929.14(C)(4) findings before imposing consecutive sentences.

### *Standard Of Review*

{¶26} The issue of consecutive sentences was discussed by the Ohio Supreme Court in the seminal case of *State v. Bonnell*, 2014-Ohio-3177:

On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court "to review the record, including the findings underlying the sentence" and to modify or vacate the sentence "if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code." But that statute does not specify where the findings

are to be made. Thus, the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences.

*Id.* at ¶ 28. The issue was subsequently addressed by this Court in *State v. Corbett,* 2023-Ohio-556 (5th Dist.):

> We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22. In *State v. Gwynne*, a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16-18.

> R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that *either* the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), *or* the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 28; *Gwynne,* supra, ¶ 16.

> Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "Where the degree of proof required

to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477, 120 N.E.2d 118.

*Id.* at ¶24-26.

### *Analysis*

**{¶27}** R.C. 2929.14 addresses prison terms, and specifically addresses the imposition of consecutive sentences at subsection (C)(4):

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a)     The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)     At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶28}** This language was applied in *Corbett,* supra*,* in which this Court stated:

"In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Newman*, 5th Dist. Fairfield No. 20-CA-44, 2021-Ohio-2124, 2021 WL 2628079, ¶ 100, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. In other words, the sentencing court does not have to perform "a word-for-word recitation of the language of the statute." *Id.* at ¶ 29. Therefore, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* If a sentencing court fails to make the findings required by R.C. 2929.14(C)(4), a consecutive sentence imposed is contrary to law. *Id.* at ¶ 34. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.

*Id.* at ¶28.

{¶29} The appellant argues that the trial court's imposition of consecutive sentences in this case is in contravention of R.C. 2929.14(C)(4). The appellee concedes that the trial court in this case "did not adequately address the proportionality issue in R.C. 2929.14(C)(4)." Accordingly, we vacate the appellant's sentence and remand the matter solely for resentencing. This Court's remand is not a comment on the propriety of consecutive sentences. The decision of the trial court is affirmed in all other respects.

## CONCLUSION

{¶30} Based upon the foregoing, the appellant's first assignment of error is without merit and is therefore overruled. With regard to the appellant's second assignment of error, we remand solely for the trial court to resentence the appellant with all necessary references to the applicable subsections of R.C. 2929.14(C)(4); in all other respects the decision of the Morrow County Court of Common Pleas is hereby affirmed.

{¶31} Costs to appellant.

By: Baldwin, P.J.

Hoffman, J. and

Popham, J. concur.